121 N.J. Super. 418 (1972)
297 A.2d 587
WM. C. BLANCHARD CO., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
BEACH CONCRETE CO., INC., A NEW JERSEY CORPORATION, DEFENDANT THIRD-PARTY, PLAINTIFF,
v.
WASHINGTON PARK BUILDING, INC., A NEW JERSEY CORPORATION, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided November 29, 1972.
*420 Mr. John C. Heavey, Jr. for plaintiff (Messrs. Carpenter, Bennett & Morrissey, attorneys).
*421 Mr. Robert Baron for defendant.
Mr. Clyde A. Szuch and Mr. Richard L. Plotkin for third-party defendant (Messrs. Pitney, Hardin & Kipp, attorneys).
Mr. Merritt T. Viscardi for C.S.T. Erection Co. East (Messrs. Apruzzese & McDermott, attorneys).
Mr. Richard L. Amster for Rockwin Corporation, Eastern Schokbeton Division (Messrs Amster & Levin, attorneys).
HERBERT, J.S.C.
This case arises out of the construction of the new office building at Washington and James Streets in Newark which has now become the headquarters of the Blue Cross-Blue Shield organization. The owner of the property is defendant Washington Park Building, Inc. That corporation had a general contract with plaintiff Blanchard to construct the building in accordance with plans and specifications prepared by architects and engineers. Defendant Beach entered into a subcontract with plaintiff Blanchard by which Beach agreed to erect the structural concrete of the building. Blanchard also made a subcontract with Rockwin Corporation, Eastern Schokbeton Division, to manufacture prefabricated architectural concrete and to install it upon the building. Schokbeton furnished the prefabricated concrete members, but in turn subcontracted with C.S.T. Erection Co. East for their placement or erection.
A web of claims and cross-claims are involved in this situation. Much time and effort has been spent in an attempt to work out an arrangement whereby every claim of every contractor and subcontractor, as well as claims by and against the owner, would be presented in a single arbitration. The attempt has not succeeded and defendant Beach now moves for an order requiring that all issues between it and the plaintiff Blanchard be submitted to arbitration and that this action be stayed until the arbitration is completed. Plaintiff Blanchard has made a cross-motion for an order to consolidate all claims and defenses of Blanchard, Beach and Washington *422 Park in a single arbitration proceeding. Plaintiff has also moved for leave to join as an additional defendant here Rockwin Corporation, Eastern Schokbeton Division, this being for the purpose of making the new defendant a party to an order for consolidated arbitration if there should be such an order entered.
An added complication is a suit brought in the Law Division of the Superior Court, Union County, Docket No. L 388-72 entitled: C.S.T. Erection Co. East and Eastern Schokbeton, a Division of Rockwin Corporation, plaintiffs, v. Washington Park Building, Inc., Wm. Blanchard Co., Welton Becket & Associates and Hospital Service Plan of New Jersey, defendants. I have been informed that in this Law Division action Washington Park and Hospital Service Plan intend to serve a third-party complaint upon Beach Concrete Co., and that the Blanchard company also intends to serve a third-party complaint upon Beach.
At earlier stages of the case it has been argued for Beach that all claims should be disposed of in a single proceeding. Beach has an arbitration clause in the subcontract between it and Blanchard, the general contractor. That clause does not encompass claims which others have against Beach or which Beach may wish to assert against those others. There is no arbitration clause anywhere in the contract documents which by its terms makes the entire web of claims and cross-claims (or even the greater part of that web) subject to a single arbitration or subject to consolidation if a series of separate arbitrations should be demanded. Nor is there any provision in the contract documents providing that a court or courts may take over the entire controversy in all its parts in the event that a complex of claims cannot be arbitrated in a single proceeding.
Beach now departs from its former position that there should be a single proceeding to determine all parts of the complex controversy and presses its motion for an order requiring only arbitration of the claims between Beach and Blanchard. It takes the position that it is entitled to such *423 an order by reason of the arbitration clause in its subcontract with Blanchard and our statute (N.J.S.A. 2A:24-1 et seq.) relating to enforcement of contracts for arbitration. In taking that position Beach has to be willing to present elsewhere its claims against parties other than Blanchard and to defend elsewhere the claims others may have against it. Following such a course will subdivide the entire case and rather obviously will make it necessary to go over the same proofs and deal with substantially the same subject matter and issues more than once. There might also be conflicting decisions by different arbitration panels or between a court decision and an arbitrator's award. Though handling all of the claims and cross-claims in a single proceeding before a single tribunal would be far from simple, that procedure in my judgment would be simpler than the duplication of effort, the possible conflicts and the over-all complications of piece-by-piece solutions.
Thus, the questions presented are:
Is Beach entitled to an order for an arbitration of all Beach-Blanchard claims and only those claims?
Or  Can a single consolidated arbitration of all claims between all parties be ordered?
Or  Can all parties to the present action and to the action in the Law Division, Union County, be required to litigate in one of those actions every existing claim and defense?
The "General Conditions" of the prime contract between Washington Park Building, Inc. and plaintiff Blanchard contain the following paragraph relating to arbitration:
7.10.1 All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, except as set forth in Subparagraph 2.2.9 with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.7.5 and 9.7.6, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate *424 shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.
Beach's motion relies upon the following language found in a set of "General Conditions" which are incorporated in the Beach-Blanchard contract:

85. ARBITRATION

(a) Disputes, claims, or questions subject to arbitration under this Contract, shall be submitted to arbitration in accordance with the provisions then prevailing, of the Construction Industry Arbitration Rules of the American Arbitration Association. This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law, and judgment upon the award rendered may be entered in the highest court of the forum, State or Federal, having jurisdiction. It is mutually agreed that the decision of the arbitration shall be a condition precedent to any right of legal action that either party may have against the other.
(b) Disputes arising from the following causes are excluded from resort to arbitration:
(1) Decisions of the Architect on matters relating to artistic effect.
(2) Claims Waived by the making or acceptance of final payment as stipulated above, Article 83.
Although this language from the Blanchard-Beach subcontract does not attempt to define matters "subject to arbitration," I think the only sensible interpretation, and one that will give the clause an effective meaning, is to read it with reference to the arbitration clause of the Washington Park-Blanchard prime contract and have it apply to "All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof * * *," except for the exclusions expressly noted.
"Arbitration, as commonly understood, is a proceeding voluntarily initiated by the parties, and at common law its basis is their voluntary act." 5 Am. Jur.2d, Arbitration and Award, § 9, at 526 (1962). Cf. In Re Smith, 381 Pa. 223, 112 A.2d 625, 55 A.L.R.2d 420 (Sup. Ct. 1955), *425 app. dism. Smith v. Wissler, 350 U.S. 858, 76 S.Ct. 105, 100 L.Ed. 762 (1955). In general, there was no enforcement at common law of agreements to arbitrate. 5 Am. Jur.2d, Arbitration and Award, § 36, at 548. The power of New Jersey courts to order performance of an agreement to arbitrate depends upon our statute, N.J.S.A. 2A:24-1, which originated as L. 1923, c. 134, p. 291 et seq.
The language of the statute supports the view that a court's power to order performance depends upon, and is limited to, the agreement of the parties. N.J.S.A. 2A:24-1 speaks exclusively of a contract or agreement "to settle by arbitration a controversy" and declares that it "shall be valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of a contract." Section 2A:24-4 provides for a stay of any action pending before a New Jersey court "upon an issue arising out of an agreement providing for the arbitration thereof," and further provides that the stay is to continue "until an arbitration has been had in accordance with the terms of the agreement." Section 2A:24-3 provides that the enforcement order of a court shall be "that the arbitration proceed in the manner provided for in the agreement."
Statements made by Judge Bigelow during the course of his opinion in Rosenthal v. Berman, 14 N.J. Super. 348 (App. Div. 1951), have some bearing upon the questions presented by the present motions. The actual decision in Rosenthal was that the trial judge had erred in granting summary judgment for the defendants on motion, the basis for that ruling being that there was an arbitration agreement encompassing the matters in dispute. On appeal it was pointed out that only the plaintiff and two of five defendants were parties to the contract which contained the arbitration clause: that there was no provision in the clause making arbitration a prerequisite to suit, and that the proper course for the trial judge would have been to refuse to give defendants a summary judgment of dismissal but rather determine whether or not a stay of the suit should be granted *426 pending arbitration. However, plaintiff argued on appeal that it would have been error even to grant a stay of his action in the Chancery Division, urging among other things that he had not agreed to arbitrate with three of the defendants and they would not be bound by any arbitration award. In response to that argument, Judge Bigelow said for the court:
Plaintiff's action cannot be stayed as against parties with whom he is not obligated to arbitrate. Under the English statute, if some of the parties to the action at law are outside the arbitration agreement and some are within, or if some of the issues in the action are beyond the agreement, the action at law will not be stayed as against any of the parties, at least where the issues and the relationships are closely intertwined. "It cannot be right to cut up this litigation into two actions, one to be tried before the arbitrator and the other to be tried elsewhere." Turnock v. Sartoris, L.R. (1889), 43 Ch. D. 150 (C.A.); Bonnin v. Neame, L.R. (1910), 1 Ch. D. 732. Cf. Fernandez v. Golodetz, 148 F.2d 625, 161 A.L.R. 1420 (2d Cir. 1945). We note that in England the stay is discretionary, while our statutory language is positive,  the court "shall stay the action." Yet the judge must have a considerable leeway in determining whether the situation presented to him is within the policy of the statute. Care must be taken to prevent a party who has agreed to arbitrate, from avoiding his bargain by dragging in extraneous issues and unnecessary parties. On the other hand, a stay should not be granted as to any of the parties where the litigation cannot be severed without unduly increasing the cost of justice, or causing other hardship to the parties. [at 352]
This language suggests that a judge should have some discretion in determining how a complicated controversy is to be handled if part of it is subject to an arbitration agreement and other parts are not subject to arbitration, but Rosenthal is not a decision to that effect.
J. Brodie & Son, Inc. v. George A. Fuller Company, 16 Mich. App. 137, 167 N.W.2d 886 (App. Ct. 1969), is somewhat similar to the present case. Defendant Fuller was the general contractor engaged to construct a building for First Federal Savings & Loan Association. The general contract between those two contained an arbitration clause. Fuller made subcontracts with each of the six plaintiffs. Those subcontracts contained arbitration clauses. About *427 five months before starting suit each of the plaintiffs demanded arbitration of their claims against Fuller. Shortly thereafter Fuller demanded arbitration of its claims against First Federal and that was followed by a demand of First Federal for arbitration of its claim against Fuller. Plaintiffs then started suit and presented to the trial court a single issue: Whether arbitration proceedings between the plaintiff subcontractors and Fuller should be consolidated with the arbitration proceedings between Fuller and First Federal. The trial court ordered consolidation and First Federal and Fuller appealed. The Court of Appeals reversed, saying,
While recognizing this lack of contractual agreement between plaintiffs and defendant First Federal, plaintiffs contend that consolidation does not affect such rights. Rather, plaintiffs feel that although there is no privity of contract there is a great degree of identity of issues involved in the dispute between Fuller and First Federal, and between plaintiffs and Fuller. They point out that the contract between Fuller and First Federal contemplates a third party and even provides for the presence of the subcontractor in any proceedings involving their rights. Plaintiffs correctly recognize that to disallow consolidation would, to a great degree, create a duplication of arbitration.
While recognizing that the proposed consolidation by the learned trial judge represents the more efficient solution, this Court must reverse. [at 888]

* * * * *
All the parties admit that there is no privity of contract or agreement to arbitrate between First Federal (owner) and plaintiffs (subcontractors). Therefore, there is no arbitration agreement between First Federal and the plaintiffs as required by the statute; and as stated in
Atkinson v. Sinclair Refining Co. (1962), 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462: "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."
The separate contracts (owner-general contractor, general contractor-subcontractor) each specifically call for arbitration. This arbitration is to be conducted under the rules of the American Arbitration Association. Since we find no privity of contract nor jurisdiction of the court to impose consolidation, we must reverse.
*428 The court also discussed possible application of the Michigan rule on consolidation, but concluded that it applied only to civil actions pending in the state's courts. In the light of the clear wording of our rule on consolidation (R. 4:38-1), the same conclusion has to be drawn here. By contrast, New York has sections in its Civil Practice Act making arbitration proceedings subject to consolidation and giving the state's courts power to consolidate. See Symphony Fabrics Corp. v. Bernson Silk Mills, Inc., 12 N.Y.2d 409, 240 N.Y.S.2d 23, 190 N.E.2d 418 (Ct. App. 1963).
My views about the best result for all concerned, including Beach, can be stated by repeating emphatically the words of the English judge already quoted above from Rosenthal:
It cannot be right to cut up this litigation into two actions, one to be tried before the arbitrator and the other to be tried elsewhere.
However, I see no proper way to reach that result, especially for a trial court, in the absence of authority and in the face of our statute. I regard the statute as the greatest obstacle to any form of consolidation which has not been consented to by all of the parties. It does not, like the New York legislation, make provision for ordering consolidation of two or more arbitrations brought under separate contracts. It addresses itself to "a written contract * * * or a written agreement" to arbitrate and says such contract or agreement shall be "enforceable." N.J.S.A. 2A:24-1. Section 4 of the statute provides that in any action brought upon an issue which by agreement is subject to arbitration, the court "shall stay the action * * *." Neither section 1 nor section 4 suggests that a judge has any discretion  assuming an agreement to arbitrate and an issue to which it applies  to refuse to enforce or to refuse to stay an action in the courts on the same issue. The positive nature of the mandate to stay was expressly recognized in Rosenthal, supra.
Section 3 of the statute is worded less positively. It provides that the Superior Court or the County Court "may in *429 a summary action direct that the arbitration proceed * * *." Section 5, which provides for the naming of arbitrators or an umpire when the parties to the arbitration agreement fail to do so, also uses the word "may." It says that the court "may in the summary action provided for in section 2A:24-3 of this title or in another action, designate and appoint an arbitrator or an umpire * * *."
My conclusion is that the use of "may" in sections 3 and 5 does not show legislative intent to confer discretionary power to enforce or not to enforce an agreement for arbitration when the parties to the agreement have a dispute covered by it. Such discretion appears to be in conflict with the unqualified declaration in section 1 that an agreement to arbitrate "shall be valid, enforceable and irrevocable * * *." Also, I am inclined to think that the word "may" was used in section 3 in connection with the words "summary action" to indicate a degree of discretion as to the manner of determining the foundation facts (agreement, existence of a covered dispute, refusal to arbitrate, etc.) on which an order to arbitrate would have to be based. This thought gains support from the manner in which "may" is used in section 5.
Beach is seeking enforcement of the arbitration clause in its contract with Blanchard. That is provided for by our statute and is all that our statute provides for. Legislation giving authority to consolidate in appropriate cases would be a useful tool, but we have no such legislation as yet and in its absence the Blanchard motion for consolidation must be denied and Beach's motion for an order directing that matters in dispute between Beach and Blanchard which fall within the arbitration clause of the Blanchard-Beach subcontract be arbitrated is granted.
Insofar as this suit involves issues between Beach and Blanchard that are subject to the arbitration clause of the Blanchard-Beach subcontract, there will be a stay of those aspects of the suit. If it becomes important to any party in this case to apply for a stay of any other issues on the ground that they are subject to arbitration, that may be done.
*430 I have also considered the argument that the Chancery Division, under general equity powers, can  and in this case should  order arbitrations stayed and direct that questions involved therein be disposed of in litigation in the courts. This argument, if valid, would lead to an order consolidating this case with the Law Division case in Union County, or vice versa. I cannot accept the argument, however. The reasons requiring its rejection are much the same as those against consolidation of two or more arbitrations. Beach has a contract for arbitration and seeks to have it enforced. By statute our courts are required to enforce. To keep Beach out of arbitration, and keep it in the courts to litigate the claims between it and Blanchard as part of a larger litigation, would be to deny Beach enforcement of its contract to which the statute says it is entitled.
No costs are allowed.