# LITTON BIONETICS, INC. *v.* GLEN CONSTRUCTION COMPANY, INC. ET AL.

[No. 5, September Term, 1981.]

*Decided November 27, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Thomas C. Wheeler,* with whom were *Pettit & Martin, Gerard E. Mitchell* and *Stein, Mitchell & Mezines* on the brief, for appellant.

*J. Richard Margulies,* with whom were *Braude, Margulies, Sacks & Rephan, Chartered* on the brief, for appellee Glen Construction Company, Inc. *Patrick J. Attridge* and *John A. King* on the brief of other appellee A. Kent Dickey.

RODOWSKY, J., delivered the opinion of the Court. SMITH, DIGGES and DAVIDSON, JJ., dissent. DAVIDSON, J., filed a dissenting opinion at page 57 *infra,* in which SMITH and DIGGES, JJ., concur.

The principal question presented in this case is whether a circuit court has the power to order that the arbitration of a dispute between the owner of a newly constructed building and the building's architect be consolidated with the arbitration of disputes between the owner and the building's general contractor. For reasons which follow, we shall hold that a circuit court is so empowered under the Maryland Uniform Arbitration Act, Md. Code (1974, 1980 Repl. Vol.), §§ 3-201 through 3-234 of the Courts and Judicial Proceedings Article.

Appellant, Litton Bionetics, Inc. (Litton), is the owner of a toxicology laboratory building in Rockville, Maryland for which one of the appellees, Dickey & Dickey (Dickey) of Fairfax City, Virginia, was architect. The architectural services agreement with Litton contains an arbitration provision which in relevant part reads:

> All claims, disputes and other matters in question arising out of, or relating to, this Agreement or the breach thereof shall be decided by arbitration in accordance with the Construction Industry Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law.

The other appellee, Glen Construction Company, Inc. (Glen), of Rockville, was the general contractor for the project. Its construction contract with Litton contains an arbitration

provision which includes the same language as that quoted above.[1] Litton authored both agreements.

Completion of the building was in December 1978. On April 25, 1980, Glen filed with the American Arbitration Association (AAA) a demand for arbitration against Litton in which Glen claimed $163,989 for delay. Litton, on June 16, answered and counterclaimed for $1,178,570, the largest components of which related to epoxy coating on concrete floors, the HVAC system, and claims of energy losses, lost profits and unabsorbed overhead.

On July 3, 1980, the AAA sent Glen and Litton a list of possible arbitrators "from which three shall be appointed," in accordance with § 13 of the AAA rules.[2] It appears that the AAA exercised its discretion in determining that the Litton-Glen arbitration would be before a panel of three.[3]

---

1. The first sentence of the Litton-Glen arbitration provisions excepts "claims which have been waived by the making or acceptance of final payment as provided in" another paragraph of the general conditions. The exception is not relevant here.

2. Litton's appendix contains the AAA Construction Industry Arbitration Rules effective January 1, 1981. No issue has been raised about that date. Section 13 of those rules provides:

> APPOINTMENT FROM PANEL — If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner: Immediately after the filing of the Demand or Submission, the AAA shall submit simultaneously to each party to the dispute an identical list of names of persons chosen from the Panel. Each party to the dispute shall have seven days from the mailing date in which to cross off any names to which it objects, number the remaining names to indicate the order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree upon any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from other members of the Panel without the submission of any additional lists.

3. Section 17 of the Construction Industry Rules provides:

> NUMBER OF ARBITRATORS — If the arbitration agreement does not specify the number of arbitrators, the dispute shall be heard and determined by one arbitrator, unless the AAA, in its

Glen's July 22 reply to the Litton counterclaim was a five-page letter. It referred in part to inspections of the epoxy coating and of the HVAC system by the architect's representatives. It contained a statement that Litton "should have specified a heavier duty class of supply and exhaust fans than the contract, in fact, specified."

Thereafter Litton, on September 8, 1980, filed with the AAA a demand for arbitration against Dickey alleging negligence and seeking damages, net of retainage, of $56,761.28. In its covering letter to the AAA, Litton pointed out that its demand against Dickey involved the same construction project as that in the Glen-Litton arbitration and advised that Litton was "presently attempting to obtain the consent of the other parties to consolidate these actions for hearing in one proceeding." When Glen objected to the consolidation, the AAA on September 22 wrote to all parties stating that, "[a]bsent the agreement of all parties or applicable contractual provisions authorizing joint arbitrations, the Association must administer the cases separately." Selection of the three-person panel for the Glen-Litton arbitration was completed by October 9, 1980 as the result of the absence of any objection to a person selected by the AAA to replace a previously selected arbitrator who had withdrawn.

Litton amended its demand for arbitration with Dickey on October 23, 1980 in order to claim $1,178,570, the amount of Litton's counterclaim in the Glen-Litton arbitration. This amended claim was in the alternative and stated that it would be withdrawn to the extent that Litton obtained recovery against Glen. The amended demand quoted those portions of Glen's reply to Litton's counterclaim in which Glen had referred to inspections by the architect's representatives and to the specifications for the project.

On the next day, October 24, 1980, Litton filed a petition against Glen and Dickey on the equity side of the Circuit Court for Montgomery County. The relief sought was a

discretion, directs that a greater number of arbitrators be appointed.

declaratory judgment that the Glen-Litton and Litton-Dickey arbitrations be consolidated and that a mandatory injunction be issued directing Glen and Dickey to consent to the consolidation. The defendants were directed to show cause why the relief requested should not be granted at a hearing set for November 28, 1980.

There is no record of what transpired at the hearing on November 28. No testimony was presented and no exhibits were formally marked into evidence. Rather, it appears that the parties argued to the court on the basis of their pleadings and from contracts and letters which had been attached to their pleadings and legal memoranda.[4] By a written order of December 5, 1980 the trial court denied Litton's petition. That court gave no statement of the grounds for its decision as required by Md. Rule 18 b, and there is no record that any party requested one. Arbitration proceedings have been stayed, pending appeal, by order of the trial court. Litton's petition for certiorari and Glen's cross-petition were granted prior to consideration of Litton's appeal by the Court of Special Appeals.

There are basically two issues on the merits: (1) whether the court below had power to order consolidation and, if so, (2) whether the failure to consolidate was an abuse of discretion in this case. Litton contends that this power exists under both the Maryland Arbitration Act and under the Federal Arbitration Act, 9 U.S.C. §§ 1-14, which it says applies here.

Glen also moves to dismiss the appeal.

I

In support of its motion to dismiss Glen argues that the order appealed from is interlocutory because it in effect directs arbitration of two disputes which are to proceed separately. Glen relies on *Maietta v. Greenfield*, 267 Md. 287, 297 A.2d 244 (1972), which held that an order directing

---

4. Litton has reproduced documents from the original record in its record extract and the appellees have cited liberally to those documents in their briefs. The authenticity of these documents appears to be conceded.

arbitration is not appealable. *Maietta* involved the application of the Maryland Uniform Arbitration Act as found in Code (1957, 1968 Repl. Vol.), Art. 7, Title, "Arbitration and Award." Section 18 of that Act specified six types of court orders involving arbitration from which an appeal could be taken.[5] These did not include an order to arbitrate.

However, Article 7 was repealed with the adoption of the Courts and Judicial Proceedings Article as part of the Code revision project. Acts of 1973, 1st Sp. Sess., ch. 2, § 2 at 388. The treatment of the provisions of former Art. 7, § 18 in the revision is an instance in which a substantive change was intentionally made. The change lies in Md. Code (1974, 1980 Repl. Vol.), § 12-301 of the Courts and Judicial Proceedings Article, which in relevant part reads:

> [A] party may appeal from a final judgment entered in a civil or criminal case by a circuit court. *The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law.* [Emphasis added.]

Prior to this enactment, the general rule with respect to appealability of judgments in civil cases was as described in *Simpler v. State ex rel. Boyd,* 223 Md. 456, 460-61, 165 A.2d 464, 466 (1960):

> [W]here the lower court proceeds in the exercise of its usual and general jurisdiction, an appeal will lie

---

5. Section 18, in pertinent part, provided:

(a) An appeal may be taken from:
(1) An order denying an application to compel arbitration made under § 2;
(2) An order granting an application to stay arbitration made under § 2(b);
(3) An order confirming or denying confirmation of an award;
(4) An order modifying or correcting an award;
(5) An order vacating an award without directing a rehearing; or
(6) A judgment or decree entered pursuant to the provisions of this article.

from any final judgment it may pronounce in a civil case. But to this general rule, there are certain exceptions, and one of these exceptions is that where a special or limited jurisdiction is conferred upon the circuit courts . . . to be exercised in a particular mode, and not according to the ordinary course of the common law, no appeal will lie from their judgments, unless expressly provided for by statute. [Citation omitted.]

The Revisor's Note to § 12-301 (1974 Vol.) makes plain that the rule requiring specific statutory authorization for an appeal to lie from judgments entered in actions where the court was exercising a special statutory jurisdiction was viewed as "something of a trap." The Note then says:

It seems more reasonable to let the broad general language include appeals in such cases unless the legislature expressly decides to deny them. This approach will eliminate the necessity of deciding whether a given jurisdiction is common law or special, limited and statutory. It will also permit the repeal of numerous special appeal provisions, such as Article 7, § 18 . . . .[6] [Citation omitted.]

The rule applied in *Maietta* is no longer the law. The present Maryland Uniform Arbitration Act does not

---

**6.** The change effected by § 12-301 is even more fully described in the Code Revision Commission's Report No. 3B to the Legislative Council of September 21, 1972, p. 4, where it is said:

The fact that this [special, statutory jurisdiction] exception is omitted from the [existing] statute is a trap for the litigant and for the legislative draftsman. It has also tended to produce a spate of statutory special appeal provisions, such as Article 7, Sec. 18 . . . . The statutes indicate that the General Assembly normally intends to confer a right of appeal when it grants special statutory original jurisdiction.

Consequently, the Commission proposes to recognize the actual situation and to provide generally for such appeals in Section 12-301. The statute will then say what it means and mean what it says; present special appeal statutes may be repealed; and the General Assembly will not have to create special appeal rights when it creates special statutory original jurisdiction. Of course, if the legislature creates such a jurisdiction, and wishes to deny a right of appeal, it should do so.

expressly deny the right of appeal from a final judgment entered by a court in the exercise of jurisdiction under that statute. Thus, the question is simply whether the order appealed from constitutes a final judgment. Because the order denied all of the relief sought by Litton and completely terminated the action in the circuit court, it is an appealable, final judgment. *Department of Public Safety v. LeVan,* 288 Md. 533, 419 A.2d 1052 (1980).

## II

### A

In this case there is no genuine dispute between the parties as to the material facts insofar as those facts relate to Litton invoking the Maryland Arbitration Act.[7] There was a justiciable controversy between the parties concerning the interpretation of the Maryland Arbitration Act and whether it empowered a court to order consolidation. That issue is a question of law. Under these circumstances, we may consider that the trial court in effect entered a summary declaratory judgment adverse to Litton, even though no formal motion for a summary judgment was made by any party. A similar problem was presented in *Hunt v. Montgomery County,* 248 Md. 403, 237 A.2d 35 (1968). There landowners, the zoning of whose properties had been upgraded by a "lame duck" county council, sought a declaratory judgment that the newly elected county council had no power to reconsider the reclassifications. Hearing in the trial court consisted of oral argument on the county's demurrer to the petition, following which the court entered a declaratory judgment interpreting the applicable statutory provisions adversely to the property owners. This Court affirmed. We said that the trial court had "in effect granted a summary declaratory judgment" and that "[e]ven though no formal motion for summary judgment under the rules was made, there was before the court enough to justify its

---

7. There is a dispute whether Glen's contract with Litton is one "evidencing a transaction involving commerce" under 9 U.S.C. § 2. Under our disposition of this case we need not decide whether conflicting inferences from the facts are material to resolution of that dispute.

action in granting a summary declaratory judgment." *Id.* at 411, 237 A.2d at 39.

The difficulty is that we cannot tell from the cryptic final order what the trial court's determination was on the question of its power. Rather than simply deny the petition, the trial court should have entered a decree which passed upon and adjudicated the power issue, to the end that the rights of the parties would be clearly delineated and that controversy terminated. *Mauzy v. Hornbeck,* 285 Md. 84, 400 A.2d 1091 (1979); *Robert T. Foley Co. v. W.S.S.C.,* 283 Md. 140, 389 A.2d 350 (1978); *Donnelly Advertising Corp. v. City of Baltimore,* 279 Md. 660, 370 A.2d 1127 (1977); *Dart Drug Corp. v. Hechinger Co.,* 272 Md. 15, 320 A.2d 266 (1974). Since the trial court may never have exercised any discretion because it concluded that it had no power to exercise, we shall address initially the question of power.

### B

Inasmuch as arbitration is a matter of agreement between the parties, the problem of power with which we are here concerned arises only when the parties have not provided in their agreements whether consolidation is or is not authorized. The problem arises when there is a common party to two or more agreements and there is a commonality of subject matter of the disputes under the different agreements. The question is whether a court can, in appropriate circumstances, direct that the arbitration between the common party and one adversary be heard at the same time as the arbitration between that common party and another adversary, in the absence of unanimous consent.

Litton's agreements with Glen and with Dickey do not expressly require or prohibit consolidation of arbitrations between the respective signatories with related arbitration proceedings. The Construction Industry Rules of the AAA, which form part of the contracts between the parties here, are similarly silent on the subject, although the policy of the AAA in administering arbitrations has been not to consolidate, absent unanimous consent. Decisions arising under

state arbitration statutes and involving similar circumstances are divided as to whether consolidation may be compelled. *See* Annot., *State Court's Power to Consolidate Arbitration Proceedings,* 64 A.L.R.3d 528 (1975).

Those courts which find there is power to order consolidation view the statutorily conferred power to enforce an arbitration agreement as including the power to direct that the agreed arbitration be conducted in conjunction with a sufficiently related arbitration. These courts emphasize that such a procedure avoids the danger of inconsistent results which can arise if the common subject matter is arbitrated sequentially before different arbitrators. This line of cases points to the convenience and economy to parties and witnesses in resolving by one proceeding disputes which arise out of common facts and circumstances. Courts which have held there is no power under their state arbitration act to compel consolidation stress that a court cannot rewrite the agreement of the parties. "Rewriting the agreement" is used in two senses in the cases. First, because the agreement is silent on consolidation, a court may be taking the position that it can do no more than enforce what the parties have expressed, or necessarily implied, in their agreement. This is the sense of "rewriting" with which the first level of our power analysis is concerned. The "rewriting" bar to consolidation is also applied in situations where court ordered consolidation could not be procedurally effected without conflicting with the rights of one or more of the parties under their contracts. This problem primarily arises in the mechanics of meshing the arbitration procedure under one contract with the arbitration procedure provided under a related agreement. For example, one or more of the agreements involved may provide for arbitration before a panel composed of three persons, where each of the two parties to the particular agreement selects his own arbitrator and the two so chosen select the third member of the panel. We shall refer to this method of selection as a "2&1" procedure.

M. Domke, *Law and Practice of Commercial Arbitration* 272, 274 (1968) states that "[t]he general rule is that a court

*may* order consolidation of arbitration proceedings where the parties are not the same if the issues are substantially the same and if no substantial right is prejudiced." But he cautions that the "case may be wholly different when not a single agency administering arbitration is involved but the two agreements between the same parties provided for arbitration before different tribunals." (Emphasis in original.)

New York is unquestionably the leading jurisdiction of those which find a power to consolidate. Initially the New York decisions relied upon provisions of the former Civil Practice Act which deemed arbitration to be a special proceeding and which permitted consolidation of special proceedings whenever it could be done without prejudice to a substantial right. *See In re Symphony Fabrics Corp. (Bernson Silk Mills, Inc. and Barbara Dance Frocks),* 12 N.Y.2d 409, 240 N.Y.S.2d 23, 190 N.E.2d 418 (1963). In the 1962 adoption of the New York Civil Practice Law and Rules, classification of arbitration as a special proceeding was intentionally discarded. This led the Appellate Division to conclude that courts no longer had authority to consolidate arbitration proceedings. *See County of Sullivan v. Edward L. Nezelek, Inc.,* 42 N.Y.2d 123, 127, 397 N.Y.S.2d 371, 374, 366 N.E.2d 72, 74 (1977). The Court of Appeals of New York rejected this position in *In re Chariot Textile Corp. (Wannalancit Textile Co. and Kute Kiddies Coats, Inc.),* 18 N.Y.2d 793, 275 N.Y.S.2d 382, 221 N.E.2d 913 (1966), by adopting the dissenting opinion at the Appellate Division. That dissenting opinion advanced two grounds on which to found consolidation. The first was that the common party to the agreements there involved, by having moved in court for consolidation, made each of the arbitrations a special proceeding. As to the second foundation, which is relevant here, the dissenting Appellate Division judge said:

CPLR 7501 provides that a written agreement to arbitrate "confers jurisdiction on the courts of the state to enforce it." I would hold that jurisdiction to enforce contracts to arbitrate imports power to regulate the method of enforcement. Since the majority

46

of the court tacitly admits that the instant case presents a proper basis for consolidation of the arbitrations, and rests its reversal solely on the ground of lack of power, I must dissent. [21 A.D.2d 762, 763-64, 250 N.Y.S.2d 493, 495 (1964).]

Although New York does not have the Uniform Arbitration Act,[8] the Maryland statute contains the same language as that relied upon by the Court of Appeals of New York. Section 3-202 of our Courts and Judicial Proceedings Article states that "[a]n agreement providing for arbitration under the law of the State confers jurisdiction on a court to enforce the agreement and enter judgment on an arbitration award."

A rationale with a somewhat different emphasis was advanced in 1977 by the Court of Appeals of New York in *County of Sullivan v. Nezelek, supra,* 42 N.Y.2d at 128, 397 N.Y.S.2d at 374, 366 N.E.2d at 75, where the court said:

We recognize the fundamental principle that the resolution of disputes by arbitration is grounded in agreement of the parties. In that perspective, on principle it would have seemed preferable to premise orders directing consolidation in arbitration on express agreements of parties to that effect. That was not, however, the basis for the development of the judicial power to consolidate. In recent times, given the decisions of our court and others, parties signing an agreement to arbitrate must be held to do so in contemplation of the announced authority of the courts in proper cases to direct consolidation. If it is now desired to avoid the possibility of consolidation, appropriate provisions to preclude or limit consolidation can be drafted for inclusion in the particular arbitration agreement.

8. In this opinion a state is classified as having adopted the Uniform Arbitration Act if it is listed in the table of jurisdictions set forth in 7 Uniform Laws Annot. (1978 and 1981 Cum. Supp.) 1.

The Supreme Court of Minnesota has accepted the *Chariot* reasoning in interpreting that state's version of the Uniform Arbitration Act. *Grover-Dimond Associates, Inc. v. American Arbitration Association,* 297 Minn. 324, 211 N.W.2d 787 (1973). That case involved a demand for joint arbitration by the owners of a building against the general contractor and the architect, who objected. The court held (*id.* at 329-30, 211 N.W.2d at 790):

> *In the case before us, the parties have already agreed to use the same arbitrators.* To require that they hear the same evidence twice is to ascribe to the parties an intention not expressed in their agreements. If the arbitration agreements explicitly provided for joint or separate hearings, the agreements would, of course, govern. In the absence of such language, and where there is no showing of prejudice, *we hold that the order directing joint arbitration reflects the policy of our arbitration statute and furthers its purpose.* It is obvious from an examination of claims made by the architect and the contractor that each will blame the other for incurring the expenses which the owners contend were unauthorized. This is not a case of requiring a party to join in a proceeding against a stranger. The architect and contractor are not obligated to arbitrate their dispute with one another. [Emphasis added.]

The reasoning of *Grover-Dimond* was accepted and applied by the Supreme Court of Nevada in its interpretation of that state's Uniform Arbitration Act in a construction contract case. *Exber, Inc. v. Sletten Construction Co.,* 92 Nev. 721, 558 P.2d 517 (1976). The case presents a conceptually more difficult problem for consolidation than that requested by Litton in the instant matter. There two subcontractors demanded arbitration with the general contractor and with the owner. The owner resisted on the ground that it had no contractual duty to arbitrate with the subs and that it would not be bound by any award rendered

in the arbitration between the general and the subcontractors. Arbitration provisions of the general contract incorporated the Construction Industry Rules of the AAA and each subcontract extended to the subcontractor the same right of arbitration granted the general contractor under his contract. Because the same evidence, witnesses and legal issues were involved in the owner-general dispute as in the general-subs dispute, and because the court did not view the case as one "requiring a party to join in a proceeding against a stranger," consolidation was ordered to "avoid the possibility of conflicting awards, as well as the additional time and expense of separate proceedings." *Id.* at 732, 588 P.2d at 524.

An intermediate appellate court in California refused consolidation in the case before it but declined flatly to hold that "consolidation of arbitration proceedings is never permitted where the agreement is silent in that regard." *Atlas Plastering, Inc. v. Superior Court of Alameda County,* 72 Cal. App. 3d 63, 72, 140 Cal. Rptr. 59, 63-64 (1977). That case involved claims by four subcontractors against the general. Each subcontract provided for a 2&1 arbitration panel, but the trial court had ordered a consolidated arbitration in which one arbitrator would be selected by the general contractor and one arbitrator would be selected by the subcontractors collectively, with the third arbitrator selected by the two so chosen.

Trial courts in New Jersey have reached different results under that state's arbitration statute, which is not the Uniform Arbitration Act. In *James Steward Polshek & Associates v. Bergen County Iron Works,* 142 N.J. Super. 516, 362 A.2d 63 (Ch. Div. 1976), the agreement between the owner and architect called for arbitration in accordance with the Construction Industry Arbitration Rules of the AAA and the contract between the owner and contractor contained a substantially identical clause. The contractor demanded arbitration with the owner and with the architect, who objected based on lack of privity with the contractor. The owner cross-claimed in arbitration against the architect. It was held that the architect could not be compelled to

arbitrate directly with the contractor but that the arbitration between contractor and owner could be consolidated with the arbitration of the claim of the owner against the architect. In so doing, the court declined to follow an earlier decision in the Chancery Division in *Wm. C. Blanchard Co. v. Beach Concrete Co.,* 121 N.J. Super. 418, 297 A.2d 587 (1972), which had denied consolidation on the ground that neither court rule nor statute authorized it. On this point the court in *Polshek* said (*id.* at 528-29, 362 A.2d at 69):

> An agreement to arbitrate confers jurisdiction upon the court to enforce it, and it follows that such jurisdiction imports power to regulate the method of enforcement. Consequently this court respectfully disagrees with the view in *Blanchard* that consolidation is inconsistent with section one of our statute, providing that agreements to arbitrate "shall be valid, enforceable and irrevocable." Consolidation is merely a procedure controlling the manner of arbitration and does not affect the parties' contractual right to arbitration which remains "valid, enforceable and irrevocable."

The court observed that there was no problem presented in that case concerning selection of arbitrators or inconsistent contractual provision. *Id.* at 529, 362 A.2d at 70.[9]

Consolidation has been ordered in cases arising under the Pennsylvania arbitration statute. However, these decisions were based not on the statute's provisions, but on an interpretation of the contracts involved. *See Gavlik Construction Co. v. H.F. Campbell Co.,* 526 F.2d 777 (3d Cir. 1975); *Children's Hospital of Philadelphia v. American Arbitration Association,* 231 Pa. Super. 230, 331 A.2d 848 (1974) (where

---

**9.** Where the owner of a construction project contracted directly with contractors A, B, C, D and E, each of whose contracts called for arbitration under the AAA procedures, and E demanded arbitration with the owner who then filed third party claims in arbitration against A, B, C and D, Long Branch Sewerage Authority v. Molnar Electrical Contractors, Inc., 143 N.J. Super. 492, 363 A.2d 917 (Ch. Div. 1976) held that the court could order consolidation because the arbitration clauses were identical and the parties had knowledge of the common language.

the owner was in direct privity with four contractors on the project, consent to consolidation was found to be necessarily implied from identical arbitration provisions which embraced the Construction Industry Rules of the AAA). But where an owner brought suit against the architect, general contractor, roofing subcontractor and roofing materials supplier, and the architect obtained an order compelling the owner's claims against him, the general and the subcontractor to be arbitrated, it was held that the architect could not demand arbitration with the subcontractor, over the latter's objection, where there was no arbitration agreement between the architect and the subcontractor. *Cumberland-Perry Area Vocational-Technical School Authority v. Bogar & Bink,* 261 Pa. Super. 350, 396 A.2d 433 (1978).

In the instant appeal Litton is not trying to force Dickey and Glen to arbitrate with each other. But Dickey and Glen have respectively agreed to arbitrate with Litton. Litton seeks only to have those two proceedings conducted at the same time and place and decided by the same arbitrators.

One of the earliest cases to deny consolidation was *J. Brodie & Son, Inc. v. George A. Fuller Co.,* 16 Mich. App. 137, 167 N.W.2d 886 (1969). Michigan adopted the Uniform Arbitration Act in 1963. In that case the general contractor demanded arbitration with the owner over a claim for delay damages which included claims asserted against the general contractor by subcontractors. The subcontractors also sought arbitration with the general and consolidation of all the arbitration proceedings. The subcontractors were willing to accept the same arbitrators who had been selected for the owner-general arbitration, but both the owner and general contractor objected to consolidation. The Michigan court reasoned that there was no agreement in the contracts that disputes were to be arbitrated as part of a single action, that no refusal to arbitrate had been shown and that there was no arbitration agreement between the owner and the subcontractors.

A similar result was reached by the Supreme Judicial Court of Massachusetts in *Stop & Shop Companies, Inc. v. Gilbane Building Co.,* 364 Mass. 325, 304 N.E.2d 429 (1973), in which the owner filed with the AAA a demand for arbitration against the architect and contractor. The architect objected. It was held that the Massachusetts version of the Uniform Arbitration Act had no provision similar to those relied upon in the *Chariot* decision in New York and that, since no party had refused to proceed to arbitration or denied the existence of any agreement to arbitrate, there was no statutory authority for a court to order consolidation. This result was subsequently changed by statute.[10]

*Consolidated Pacific Engineering, Inc. v. Greater Anchorage Area Borough,* 563 P.2d 252 (Alaska 1977) arose under the Uniform Arbitration Act which the court read to be silent on the subject of consolidation. A general contractor sought arbitration with the owner who in turn sought arbitration with the architect and consolidation of the two proceedings. The court said that it could not alter the arbitration terms which the parties had inserted in their contracts. The two contracts involved provided for arbitration under the AAA Construction Industry Rules. Because it appeared that the AAA "has had a long-established policy of not approving consolidation without the written consent of all parties" the court held that "one entering into a contract such as the one at issue here would reasonably expect that consolidation could only take place with such written consents." *Id.* at 255.

Disputes arising out of the construction of the Superdome in New Orleans were involved in *Louisiana Stadium and Exposition District v. Huber, Hunt & Nichols, Inc.,* 349 So. 2d 491 (La. App. 1977). A consolidation sought by the owner of its claims against the architects and the contractors was denied because it would "have the effect of rewriting certain provisions of the contract . . . ." *Id.* at 493. The particular provisions are not specified in the opinion. Inferentially the

---

**10.** Mass. Ann. Laws Ch. 251, § 2A (1980), as enacted by 1977 Mass. Acts, ch. 414.

court was referring to the arbitration clauses which incorporated the Construction Industry Rules but which did not speak to consolidation of arbitration demands.

Most recently, the Supreme Court of Washington has adopted the analysis of the Alaska Supreme Court in *Consolidated Pacific Engineering, Inc., supra,* 563 P.2d 252, in a case involving claims between an original seller, a reseller, and the ultimate buyer. *Balfour, Guthrie & Co., Ltd. v. Commercial Metals Co.,* 93 Wash. 2d 199, 607 P.2d 856 (1980).

We are satisfied from our review of the cases that the better analysis is presented in those decisions which conclude that the power to order consolidation exists as an incident of the jurisdiction statutorily conferred on a court generally to enforce arbitration agreements. We hold that the power is not limited simply to enforcing a particular agreement which contains an express consent to consolidation with related arbitrations. We are also fully cognizant that a court may not alter the contracts which parties have made. There is nothing irreconcilable between the two propositions. The existence of the power is to be distinguished from whether it should be exercised in a given case. The inability to exercise the power in a given case, because conflicting arbitration provisions prevent fashioning a consolidated proceeding without altering contract rights, is no basis for concluding that the court has no power in any case.

Here, the architectural services agreement does not confer a contractual right on the architect to arbitrate with the owner separately from related disputes and the construction contract does not confer a contractual right on the contractor to arbitrate with the owner in a proceeding which excludes related claims of the owner against third persons. Nor do we find such a right in the provision for arbitration in accordance with the Construction Industry Rules. Those rules are silent on consolidation. While it is the policy of the AAA to require unanimous consent, the AAA simply administers the arbitration proceedings. Each arbitration agreement in this case provides that it will be specifically enforceable "under the prevailing arbitration law." We deal here with

disputes arising out of the performance of contracts involving a Maryland construction project and the Maryland statute is applicable. Since we have concluded that § 3-202 of the Courts and Judicial Proceedings Article embraces the power to order consolidation in appropriate cases, and since the contracts do not confer a right to arbitrate separately, the policy of the AAA cannot prevail over the statute.

Thus, the Circuit Court for Montgomery County should have issued a judgment on the first issue presented to it declaring that it had the power, exercisable in appropriate cases, to consolidate proceedings under separate arbitration agreements.

## C

We emphasize that a court would improperly exercise its power to direct consolidated proceedings if that consolidation deprives any objecting party of a contractual right under the arbitration agreement. The point may be illustrated by contrasting *Atlas Plastering, Inc., supra,* 72 Cal. App. 3d 63 with *In re Vigo Steamship Corp. (Marship Corp. of Monrovia and Frederick Snare Corp.),* 26 N.Y.2d 157, 309 N.Y.S.2d 165, 257 N.E.2d 624, *cert. denied,* 400 U.S. 819, 91 S. Ct. 36, 27 L. Ed. 2d 46 (1970). Both cases involved arbitration provisions of the 2&1 variety in all relevant contracts. The consolidation order reversed in *Atlas Plastering,* which required four subcontractors to select but one arbitrator among them, obviously deprived each of those parties of his contractual right to select an individual representative on the arbitration panel. *Vigo,* on the other hand, involved liability for damage to a vessel. At the end of a time charter, the owner claimed in arbitration against the time charterer who in turn claimed against the last voyage charterer. The time charterer, who was seeking to consolidate, agreed to accept as its representative for both arbitrations the arbitrator named by the owner. In this way a three-person panel resulted and the rights of the voyage charterer, under its contract, were preserved, even though it objected to consolidation. The same procedure as in *Vigo* was utilized in

*Marine Trading Ltd. v. Ore International Corp.,* 432 F. Supp. 683 (S.D.N.Y. 1977).

In the instant matter the appellees argue that Dickey will be deprived of its right to participate in the selection of arbitrators if consolidated proceedings are to be heard by the panel already selected to hear the Litton-Glen dispute under their agreement. Litton disclaims that it seeks any such result. Rather, Litton urges that a new panel be selected with all parties participating in the selection process. Looking at the Litton proposal solely from the standpoint of whether contractual rights of any party would be denied, we see no objection.

Appellees rely on two New York cases to support denying exercise of the consolidation power in the instant matter. *In re Stewart Tenants Corp. (Diesel Construction Co., Inc. and 70 East 10th Street Corp.),* 16 A.D.2d 895, 229 N.Y.S.2d 204 (1962), illustrates the inability to consolidate under conflicting arbitration provisions without rewriting the agreements. One contract called for arbitration before a person appointed by the president of the Real Estate Board of New York, Inc., while the other contract called for arbitration before the AAA. *Met Food Corp. v. M. Eisenberg & Bros., Inc.,* 59 Misc. 2d 498, 299 N.Y.S.2d 696 (1969), was a construction project case in which the owner engaged a building contractor and an electrical contractor. Both contracts provided for the 2&1 mode of selecting arbitrators. The owner sought to consolidate in an arbitration with the electrical contractor, for which arbitrators had already been selected, claims asserted against the owner by the building contractor. Both contractors opposed consolidation. Neither contractor was willing to waive its right to designate its own arbitrator and, inferentially, the owner was apparently unwilling to accept as its own one of the arbitrators designated by another party. Neither of these cases dealt with the arbitration provisions presented here.

Under the Construction Industry Arbitration Rules as applied to the contracts here, the parties do not select the

panel of three arbitrators which the AAA has determined should be used. Proposed arbitrators are designated by the AAA. The list of proposed arbitrators is then simultaneously submitted by the AAA to the parties, each of whom may strike persons unacceptable to it. No party has any guarantee that a name which it leaves on the list of proposed arbitrators will not be stricken by another party, or that a potential arbitrator who is not stricken from the list will actually be willing and available to serve. If all proposed arbitrators are stricken, or if too few remain to staff the three-person panel, the AAA appoints the arbitrators without the submission of any additional lists. *See* n.2, *supra* and *Conejo Valley Unified School District v. William Blurock & Partners, Inc.,* 111 Cal. App. 3d 983, 990-91, 169 Cal. Rptr. 102, 106 (1980). Under these circumstances the submission of another list of proposed arbitrators to Litton, Glen and Dickey for purposes of a joint proceeding does not deprive any party of its contractual rights.[11]

### D

In determining whether to exercise the power to consolidate arbitration proceedings, a circuit court should consider the same types of factors as those which it would weigh in determining whether to consolidate equity actions pending before it under Md. Rule 503. It is an exercise of discretion.

The appellees urge that we affirm the trial court's denial of Litton's petition on the ground that there was no abuse of discretion. They correctly describe arbitration as a method for the private resolution of disputes which is intended to be expeditious. Glen in particular complains that hearing on its claims against Litton will be further delayed by the submission of a new list of proposed arbitrators for a consolidated proceeding.

---

**11.** Litton did not join the AAA as a party defendant in the court below on the strength of a letter from the AAA in which that association states it will abide by a court order and which Litton represents, without contradiction from the appellees, to be applicable to the consolidation issue. In any event, the appellees have not contended the AAA is a necessary party.

Litton submits that the trial court would abuse its discretion were it to deny consolidation, so that this Court should itself direct consolidation.

It is the function of the trial judge to weigh competing considerations in determining whether to consolidate. In this case the record does not disclose whether the circuit court ever reached the stage of weighing the various factors because that court may have concluded that it had no power to exercise in any event. The case will be remanded for the purpose of having the circuit court determine whether consolidation should or should not be ordered.

## E

One other issue remains. Litton alternatively contends that the facts in this case bring into operation the Federal Arbitration Act. That statute has been interpreted to furnish the power to order consolidation, with the interpretation process somewhat bolstered by Fed. R. Civ. P. 81(a) and 42(a). *See, e.g., Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.,* 527 F.2d 966 (2d Cir. 1975), *cert. denied,* 426 U.S. 936, 96 S. Ct. 2650, 49 L. Ed. 2d 387 (1976); *In re Czarnikow-Rionda Co., Inc. (Manumante, S.A. and Reyes Compania Naviera, S.A.),* 512 F. Supp. 1308 (S.D.N.Y. 1981); *Marine Trading Ltd. v. Ore International Corp.,* 432 F. Supp. 683 (S.D.N.Y. 1977); *Robinson v. Warner,* 370 F. Supp. 828 (D.R.I. 1974); *Episcopal Housing Corp. v. Federal Insurance Co.,* 273 S.C. 181, 255 S.E.2d 451 (1979). We interpret the Federal Arbitration Act to allow consolidation. Absent a contrary decision by the Supreme Court of the United States, we would apply the federal act in the same manner as the Maryland Uniform Arbitration Act is to be applied with respect to the consolidation of arbitration proceedings. Because there would be no difference in result in the instant matter if the Federal Arbitration Act applied to the facts here, it is unnecessary for us to determine whether this case falls within the coverage of the federal statute.

*Judgment of the Circuit Court for Montgomery County vacated.*

*Case remanded to that court for further proceedings consistent with this opinion.*
*Costs to abide the result.*

*Davidson, J., dissenting:*

Arbitration is the process whereby parties voluntarily agree to substitute a private tribunal for the public tribunal otherwise available to them. The arbitration process provides a speedy, informal, relatively inexpensive, and private procedure for resolving controversies arising out of commercial transactions, as well as a tribunal uniquely qualified to resolve such disputes. The arbitrator is not a public official imposed upon the parties by a superior authority, and he is not required to administer justice for a community which transcends the parties. Rather, he is a part of the system of self-government created by and confined to the parties and designed to serve their specialized needs. *Schreiber v. Pacific Coast Fire Ins. Co.,* 195 Md. 639, 647, 75 A.2d 108, 111-12 (1950); *Dominion Marble Co. v. Morrow,* 130 Md. 255, 260, 100 A. 292, 293 (1917). *See* M. Domke, *The Law and Practice of Commercial Arbitration,* § 2.01 at 10 (1968); Shulman, *Reason, Contract, and Law in Labor Relations,* 68 Harv.L.Rev. 999, 1016-18 (1955); Phillips, *A Lawyer's Approach to Commercial Arbitration,* 44 Yale L.J. 31, 40-41 (1934).

This Court has recognized that arbitration is a matter of contract which the parties should be allowed to conduct in accordance with their agreement and free of judicial interference. Indeed, with respect to the arbitration process, this Court, quoting then Chief Judge Cardozo, has said:

" 'The question is one of intention, to be ascertained by the same tests that are applied to contracts generally. * * * No one is under a duty to resort to these conventional tribunals, however helpful their processes, except to the extent that he has signified his willingness. Our own favor or disfavor of the cause of arbitration is not to count as a factor in the

appraisal of the thought of others.'" *Continental Milling & Feed Co. v. Doughnut Corp. of America,* 186 Md. 669, 675, 48 A.2d 447, 450 (1946).

Here, the parties agreed that all claims arising out of their contracts should be decided by arbitration "in accordance with the Construction Industry Rules of the American Arbitration Association." Those rules do not expressly authorize consolidation. Moreover, the American Arbitration Association has a long-standing policy of refusing to consolidate "absent the agreement of all parties or applicable contractual provisions authorizing joint arbitrations." In my view, under the present circumstances, the parties intended that there be no consolidation unless the parties agreed.

Maryland Code (1974, 1980 Repl.Vol.) § 3-202 of the Courts and Judicial Proceedings Article provides:

"An agreement providing for arbitration under the law of the State confers jurisdiction on a court to enforce the agreement and enter judgment on an arbitration award."

That section does not expressly authorize a court to order consolidation of arbitration proceedings.

This Court has repeatedly asserted that a statute may not be added to by judicial construction. *Collier v. Connolley,* 285 Md. 123, 128, 400 A.2d 1107, 1109 (1979); *Amalgamated Cas. Ins. Co. v. Helms,* 239 Md. 529, 535-36, 212 A.2d 311, 316 (1965). More particularly, we have reiterated that a court may not insert or omit words to make a statute express an intention not evidenced in its original form. *Holy Cross Hosp. of Silver Spring, Inc. v. Maryland Employment Sec. Admin.,* 288 Md. 685, 698, 421 A.2d 944, 950 (1980); *Baltimore Gas & Elec. Co. v. Department of Health & Mental Hygiene,* 284 Md. 216, 219, 395 A.2d 1174, 1175 (1979); *State Tax Comm'n v. Potomac Elec. Power Co.,* 182 Md. 111, 116, 32 A.2d 382, 384 (1943).

Unlike my colleagues, I am unwilling to construe the words "enforce the agreement," appearing in § 3-202, as expanding judicial jurisdiction to include authorization to

consolidate arbitration proceedings. I, therefore, find nothing in the language of § 3-202 that authorizes judicial interference with arbitration procedures established by the agreement of the parties. Accordingly, I respectfully dissent. I would hold that the trial court was without authority to consolidate the arbitration proceedings, and, therefore, I would affirm the trial court's judgment. *See, e.g., Consolidated Pacific Eng'r., Inc. v. Greater Anchorage Area Borough,* 563 P.2d 252, 254-55 (Alaska 1977); *Louisiana Stadium & Exposition Dist. v. Huber, Hunt & Nichols, Inc.,* 349 So.2d 491, 492-93 (La.App. 1977); *Stop & Shop Companies Inc. v. Gilbane Bldg. Co.,* 364 Mass. 325, 329-31, 304 N.E.2d 429, 431-32 (1973); *J. Brodie & Son, Inc. v. George A. Fuller Co.,* 16 Mich.App. 137, 141-42, 167 N.W.2d 886, 888 (1969); *Balfour, Guthrie & Co. v. Commercial Metals Co.,* 93 Wash.2d 199, 202, 607 P.2d 856, 857 (1980).

Judges Smith and Digges authorize me to state that they join me in the views expressed herein.