IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SIMEON J. OSBORN and MONICA OSBORN, and the marital community composed thereof,<br><br>Respondents,<br><br>v.<br><br>MICHAEL CALLAHAN and ROBIN CALLAHAN, individually, and the marital community composed thereof,<br><br>Appellants,<br><br>OSBORN MACHLER, PLLC, a Washington professional limited liability company,<br><br>Third Party Defendant. | No. 77871-4-I<br><br>DIVISION ONE<br><br><br>UNPUBLISHED OPINION<br><br><br><br>FILED: March 18, 2019 |

SCHINDLER, J. — Michael Callahan and Robin Callahan appeal a superior court order denying the motion to vacate the arbitrator's award, entry of judgment on the award, and the award of attorney fees. We affirm.

FACTS

Simeon Osborn and Michael Callahan are attorneys and had been close friends since 1976.

On September 16, 2016, Osborn and his spouse Monica Osborn (collectively, Osborn) filed a lawsuit against Callahan and his spouse Robin Callahan (collectively, Callahan). The lawsuit alleged Callahan owed Osborn more than $700,000 in personal loans Osborn made to Callahan between 2007 and 2009.

On March 20, 2017, Callahan filed an answer and counterclaims against Osborn and the Osborn Machler PLLC law firm.[1] Callahan claimed he was entitled to offsets and asserted claims of breach of contract, breach of fiduciary duty, accounting, and conversion. Callahan alleged that while acting as his lawyer, Osborn learned about artwork Callahan held in a storage facility as collateral for a debt. Callahan alleged Osborn or his law firm misappropriated three works of art valued at approximately $3 million. The amended answer and counterclaims did not allege misappropriation of artwork.

In September 2017, the parties participated in a mediation and entered into a CR 2A settlement agreement. Callahan agreed to pay Osborn $315,000 "in full and final settlement of the lawsuit pending between them." The parties stipulated to a schedule of payments by Callahan, a significant reduction of the debt if Callahan paid early, and acceleration of the debt if Callahan did not make certain scheduled payments.[2] The parties agreed to execute a "confession of judgment" to secure payment of the debt and "[m]utual releases for all claims." The CR 2A agreement states the mediator, retired King County Superior Court Judge Bruce Hilyer, "is appointed as arbitrator should any

---

[1] Three minutes after filing the answer and counterclaims on March 20, Callahan filed an amended answer and counterclaims. Callahan's attorney failed to serve the law firm as a third party defendant. At some point prior to the mediation, Callahan began representing himself pro se in this matter.

[2] The debt accelerated because Callahan made only the first payment required under the CR 2A agreement.

issue or dispute arise regarding the performance, interpretation or enforcement of this agreement."

With Callahan's consent, Osborn filed a notice of settlement, stating, "[A]ll claims against all parties in this action have been resolved."

Osborn's attorney drafted and sent a confession of judgment to Callahan. The confession of judgment addressed mutual releases as follows:

> The Settlement Agreement contemplates mutual releases of all claims, asserted or unasserted, known or unknown, and the dismissal of the lawsuit with prejudice. Such dismissal shall not however affect Osborn's rights to enter this Confession of Judgment upon the occurrence of Callahan's default in faithfully performing the obligations set forth in the Settlement Agreement.

Callahan objected to signing a release of "all claims, asserted or unasserted, known or unknown.".

Osborn requested arbitration to resolve the dispute. At the direction of the arbitrator, Osborn and Callahan each provided a written submission and a proposed confession of judgment.

Callahan argued the parties agreed to settle only claims asserted in the pleadings and dismissal of the lawsuit. Callahan asserted that during discovery, he asked Osborn about "all dealings with the art" and in response, Osborn produced documentation related to four works of art. Callahan claimed that shortly after the mediation, he learned that Osborn had taken possession of two additional works of art that belonged to him with an "appraised value in the millions of dollars." Callahan submitted a confession of judgment that provided for "mutual releases between the parties of only the claims asserted in the pleadings and settled in the Settlement

3

Agreement, together with a dismissal of the lawsuit with prejudice of the subject lawsuit."

The arbitrator issued a two-page "Arbitrator's Award" that set forth findings and conclusions. The arbitrator concluded the confession of judgment submitted by Osborn conformed to the CR 2A agreement. The Arbitrator's Award sets forth the following findings and conclusions:

> FINDINGS
> 1. With regard to the lawsuit entitled Osborn v. Callahan, King County Superior Court Cause No. 16-2-22333-8 SEA, a "CR2A" settlement agreement dated September 8, 2017, was negotiated and signed by and on behalf of all the parties, in which the parties appointed the undersigned to act as arbitrator and authorized the arbitrator to resolve any issues regarding the performance, interpretation and enforcement of the settlement.
> 2. The underlying lawsuit included counterclaims against petitioners Osborn and a third party complaint against Osborn Machler, PLLC, including claims and affirmative defenses for offset, breach of contract, breach of fiduciary duty, claims related to ownership of artwork, and for an accounting.
> 2. [sic] An issue has arisen between the parties regarding the form and execution of a confession of judgment. Respondent Callahan also contends that certain of his claims against petitioner Osborn were left unresolved by the settlement agreement. While the CR2A does not explicitly mention Osborn Machler, PLLC, it was clearly intended to resolve all claims including claims against Osborn Machler, PLLC, and that was clearly explained by the undersigned to Mr. Callahan.
> 3. Respondent Callahan has failed and refused to sign the form of confession of judgment prepared by counsel for petition, and petitioner Osborn has refused to sign the form of confession of judgment prepared by Callahan.
> 4. Pursuant to my preliminary order, both forms of confession of judgment have been submitted to me to decide the form of confession of judgment best conforming to the CR2A settlement agreement.
> CONCLUSIONS AND AWARD
> 5. The form of confession of judgment submitted by petitioner Osborn, attached hereto as Exhibit "A" and incorporated herein by this reference, best conforms with the terms of the CR2A settlement, and I direct that respondents Michael Callahan and Robin Callahan,

4

husband and wife, forthwith execute that confession of judgment before a notary.

6.    All claims by respondent Callahan against petitioner Osborn, including without limitation claims against the law firm of Osborn Machler PLLC and claims related to the ownership of artwork, were fully and finally settled and compromised by the CR2A settlement agreement.

The arbitrator attached the confession of judgment submitted by Osborn and directed Callahan to "execute that confession of judgment before a notary."

Callahan did not execute the confession of judgment. On November 13, 2017, Osborn obtained a superior court order confirming the Arbitrator's Award.

Callahan filed a motion in superior court to modify or vacate the Arbitrator's Award. As he previously argued to the arbitrator, Callahan claimed (1) he entered into the settlement based on deceptive information Osborn provided in discovery and (2) the settlement agreement contemplated a release of only the claims expressly asserted in the pleadings.

Osborn filed a motion to enforce the arbitration award. The superior court denied Callahan's motion to modify or vacate the arbitration award and granted the motion to enforce the Arbitrator's Award.

Callahan did not comply with the court order enforcing the Arbitrator's Award. The court entered judgment on the award and an order awarding attorney fees and costs.

## ANALYSIS

Callahan contends the court erred by enforcing the Arbitrator's Award, entering the confession of judgment, and awarding attorney fees.

Washington courts accord substantial finality to the decision of an arbitrator rendered in accordance with the parties' agreement and Washington's uniform

arbitration act, chapter 7.04A RCW. <u>Davidson v. Hensen</u>, 135 Wn.2d 112, 118, 954 P.2d 1327 (1998). Judicial review of arbitration awards is controlled by statute and permits vacation of an arbitration award only upon specific grounds enumerated in RCW 7.04A.230.[3] Such review is extremely limited and does not encompass a review of the merits of the case. <u>Boyd v. Davis</u>, 127 Wn.2d 256, 267-68, 897 P.2d 1239 (1995) (Utter, J., concurring). Absent an error of law on the face of the award, the trial court will not modify or vacate it. <u>Boyd</u>, 127 Wn.2d at 263. "[C]ourts may not search the arbitral proceedings for <u>any</u> legal error; courts do not look to the merits of the case, and they do not reexamine evidence." <u>Broom v. Morgan Stanley DW, Inc.</u>, 169 Wn.2d 231, 239, 236 P.3d 182 (2010).[4] Accordingly, "[r]arely is it possible to have an arbitration award vacated for [obvious] error of law on the face of the award." <u>Cummings v. Budget Tank Removal & Envtl. Servs., LLC</u>, 163 Wn. App. 379, 382, 260 P.3d 220 (2011).

---

[3] RCW 7.04A.230(1) provides:

Upon motion of a party to the arbitration proceeding, the court shall vacate an award if:
  (a) The award was procured by corruption, fraud, or other undue means;
  (b) There was:
  (i) Evident partiality by an arbitrator appointed as a neutral;
  (ii) Corruption by an arbitrator; or
  (iii) Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
  (c) An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to RCW 7.04A.150, so as to prejudice substantially the rights of a party to the arbitration proceeding;
  (d) An arbitrator exceeded the arbitrator's powers;
  (e) There was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under RCW 7.04A.150(3) not later than the commencement of the arbitration hearing; or
  (f) The arbitration was conducted without proper notice of the initiation of an arbitration as required in RCW 7.04A.090 so as to prejudice substantially the rights of a party to the arbitration proceeding.

[4] Emphasis in original.

Likewise, "in the case of an appeal from an arbitrator's award, an appellate court is strictly proscribed from the traditional full review." Barnett v. Hicks, 119 Wn.2d 151, 157, 829 P.2d 1087 (1992). Our review of an arbitrator's award is confined to a review of the decision by the court that confirmed, vacated, modified, or corrected that award. Expert Drywall, Inc. v. Ellis-Don Constr., Inc., 86 Wn. App. 884, 888, 939 P.2d 1258 (1997).

Callahan claims the arbitrator exceeded his authority by adding terms to the CR 2A agreement. Callahan contends (1) there was no evidence the parties contemplated, much less agreed to, a mutual release of all claims, including those unknown to the parties and unasserted in the pleadings and (2) the arbitrator ignored his claim that he was induced to settle because Osborn provided false or misleading information in discovery.

An arbitrator exceeds his or her powers within the meaning of RCW 7.04A.230(1)(d) when the arbitration award exhibits a facial legal error. Broom, 169 Wn.2d at 240. The error, if any, must be recognizable from the language of the award. Federated Servs. Ins. Co. v. Pers. Representative of Estate of Norberg, 101 Wn. App. 119, 124, 4 P.3d 844 (2000). Where, as here, the Arbitrator's Award sets forth the arbitrator's factual findings and conclusions, we consider any issues of law evident in those findings and conclusions as part of the "face of the award." Cummings, 163 Wn. App. at 389.

Callahan fails to identify any facial legal error in the Arbitrator's Award. The arbitrator resolved a dispute "regarding the form and execution of a confession of judgment." The arbitrator considered and rejected Callahan's claim that certain claims

were "left unresolved by the settlement agreement." The arbitrator concluded the confession of judgment drafted by Osborn conformed to the CR 2A agreement that resolved "[a]ll claims," including and "without limitation" the claims "related to the ownership of artwork." We conclude the face of the Arbitrator's Award exhibits no erroneous or mistaken application of law.

Callahan also contends the arbitrator erred by resolving the dispute based on written submissions without a full evidentiary hearing, depriving him of his right to due process. The statute Callahan cites, RCW 7.04A.150, does not require an evidentiary hearing.

RCW 7.04A.150(1) states the arbitrator "may conduct the arbitration in such manner as the arbitrator considers appropriate so as to aid in the fair and expeditious disposition of the proceeding." The record does not show that Callahan requested an arbitration hearing, objected to the procedure, or that the arbitrator denied any request to consider evidence. Callahan fails to establish a violation of his constitutional right to due process.

Callahan also claims the court erred by refusing to modify the arbitration award to exclude his spouse because she did not sign and was not a party to the CR 2A agreement. But the CR 2A settlement agreement states the agreement is "between Mr. and Mrs. Michael Callahan ('Callahan') and Mr. and Mrs. Osborn ('Osborn')." Both Callahan and Osborne signed and entered into the CR 2A agreement on behalf of the marital community.

Callahan argues the superior court erred in awarding attorney fees to Osborn because the parties did not incur fees as a result of a "contested arbitration" and the CR 2A agreement did not include a fee provision.

RCW 7.04A.250(3) allows the trial court to award the "prevailing party to a contested judicial proceeding" reasonable fees. Because there were contested judicial proceedings following entry of the arbitration award and Osborn prevailed in those proceedings, he was entitled to reasonable attorney fees.

Callahan also challenges the amount of the attorney fee award. We review the reasonableness of an award of attorney fees for an abuse of discretion. Rettkowski v. Dep't of Ecology, 128 Wn.2d 508, 519, 910 P.2d 462 (1996). Osborn's attorney submitted a detailed fee request that set forth the time spent by two attorneys on various tasks related to responding to the motion to vacate, enforcing the arbitration award, and securing the judgment. Osborn requested $15,240 in attorney fees and the court awarded a total of $10,000 in fees and costs. Callahan's conclusory assertion that the amount of fees was unwarranted fails to demonstrate an abuse of discretion.

Osborn seeks an award of attorney fees on appeal. Osborn is the prevailing party on appeal. Subject to compliance with RAP 18.1(d), we grant the request under RCW 7.04A.250(3).[5]

---

[5] Although Callahan suggests the arbitrator was biased, he points to nothing beyond his disagreement with the arbitrator's ruling to support the claim. In evaluating partiality, we do not look to the merits of the arbitrator's decision or the evidence. See Broom, 169 Wn.2d at 239.

We affirm the superior court order denying the motion to vacate the Arbitrator's Award, entry of the judgment on the award, and the award of attorney fees.

Schindler, J.

WE CONCUR:

Mann, J.

Appelwick, C.J.