[No. 46338. En Banc. March 13, 1980.]

BALFOUR, GUTHRIE AND COMPANY, LIMITED, *Respondent,*
v. COMMERCIAL METALS COMPANY, *Appellant.*

*Hay & Epstein*, by *John L. Hay*, for appellant.

*Blair, Schaefer, Hutchison, Wynne, Potter, Horton & Johnson*, by *Hugh J. Potter* (*Lloyd W. Weisensee* and *John Dudrey* of *Fredrickson, Weisensee & Cox,* of counsel), for respondent.

BRACHTENBACH, J.—This litigation involves two arbitration issues not before decided in Washington. First, may a court order consolidated multi–party arbitration, in a location other than that to which the parties have agreed, in contravention of the terms of the parties' contractual provisions? Second, may a court order discovery proceedings on the merits of the controversies after finding that the parties are bound by arbitration clauses in their respective contracts? We answer both questions in the negative and reverse.

This case stems from multi–party transactions. Commercial Metals Company, headquartered in Dallas, Texas, sold

steel products to Balfour, Guthrie and Company, head-quartered in San Francisco, California. Those products were imported from Korea through the port at Vancouver, Washington. Balfour in turn sold the identical products under identical specifications to Coeur d'Alenes Company. All agreements were in writing.

When the ultimate purchaser, Coeur d'Alenes Company, rejected the steel as not conforming to contract specifications, the intermediary, Balfour, likewise claimed that the steel did not meet the contract specifications of its contract with the original seller, Commercial Metals Company.

Commercial Metals filed a demand for arbitration under its contract with Balfour, demanding arbitration in Dallas. Suit was filed in federal court to compel arbitration. Ultimately, dismissal of that demand was sustained. *Commercial Metals Co. v. Balfour, Guthrie & Co.,* 577 F.2d 264 (5th Cir. 1978). Balfour filed suit in Clark County, Washington, and joined Coeur d'Alenes Company.

The first issue is generated from the contractual language relating to arbitration. The initial contract, Commercial–Balfour, provides for arbitration in Dallas. The second contract, Balfour–Coeur d'Alenes, provides for arbitration in San Francisco. The provisions are quoted in the appendix. The question is whether the Clark County Superior Court had authority to order consolidation of the arbitration proceedings among all the parties and to order that such arbitration take place in Clark County. Commercial Metals objects and insists upon arbitration in Dallas as to its controversy with Balfour.

The trial court found (1) that these multiple disputes involve like issues of fact and law, and (2) that consolidation would prevent a multiplicity of proceedings, avoid possible inconsistent decisions, provide convenience for witnesses, and reduce time and expense to the parties.

It is likely that the above circumstances found by the trial court would make consolidated arbitration proceedings more economical and efficient. That, however, is not the

question. The inquiry rather is whether the court had such authority. We hold that it did not.

 Our rationale for denying authority to order consolidation is that arbitration stems from a contractual, consensual relationship. RCW 7.04; *Thorgaard Plumbing & Heating Co. v. County of King*, 71 Wn.2d 126, 426 P.2d 828 (1967).

Here Commercial Metals and Balfour agreed to arbitration in Texas, and to be bound by the laws of that state. Balfour and Coeur d'Alenes agreed to arbitrate in California and to be bound by the laws thereof. The court should not meddle with those contractual provisions even though we might fashion a more expedient, efficient and economical remedy. "[A] person can be compelled to arbitrate a dispute only . . . in the manner in which, he has agreed so to do." *Marsala v. Valve Corp. of America*, 157 Conn. 362, 365, 254 A.2d 469 (1969).

Relying upon the rationale stated above, our Court of Appeals recently denied consolidation in a multi–party dispute. *S.K. Barnes, Inc. v. Valiquette*, 23 Wn. App. 702, 597 P.2d 941 (1979). The court noted the division among state courts which have considered the question. *See also* Annot., *State Court's Power to Consolidate Arbitration Proceedings*, 64 A.L.R.3d 528 (1975).

We are impressed with the analysis of the Alaska Supreme Court in *Consolidated Pac. Eng'r, Inc. v. Greater Anchorage Area Borough*, 563 P.2d 252 (Alaska 1977). That case denied consolidation. The court pointed out that the contracts before it were silent on consolidation, as they are here. Further, the arbitration, as here, was to be in accordance with the rules of the American Arbitration Association. The court noted at page 255 that

> the courts may not alter the arbitration terms the parties have inserted in their contract. Here, nothing is said in the contract with reference to consolidation. The court is thus confronted with a question of contract interpretation. In interpreting the contract, we look to the reasonable expectations of the parties. . . .

It appears that the Arbitration Association has had a long–established policy of not approving consolidation without the written consent of all parties. We believe that one entering into a contract such as the one at issue here would reasonably expect that consolidation could only take place with such written consents. . . . If the parties wish to provide for the possibility of consolidated arbitration in their contracts, the courts will, of course, give effect to their decision. If the parties to separate contracts all consented to consolidated arbitration, the arbitral award would be subject to judicial confirmation and enforcement. But however sound they may consider consolidated arbitration to be as a matter of policy, courts are not empowered to direct parties to undertake it when one of them objects.

(Footnotes omitted.)

The second question is whether the court erred in ordering the parties, over objection of Commercial Metals, to participate in discovery proceedings. Over several years the trial judge was presented an extensive series of motions on this subject. A portion of the discovery ordered went to the validity and applicability of the arbitration clauses. We limit ourselves to the matter of discovery about the merits of the controversy after the trial court determined the arbitration clauses to be valid.

We hold that the facts here did not justify pre-arbitration discovery. Once arbitration proceedings are validly invoked the arbitrators are the ones who should determine the nature and scope of the whole gamut of discovery. They are the ones who are to decide what facts, in what form, are necessary for their decisional process. This conclusion is implicit in our statute which authorizes arbitrators to compel attendance of witnesses, production of documents and the taking of depositions. RCW 7.04.110 and .120.

The parties rely entirely upon federal cases on this issue. The federal rule is summarized thusly: "Discovery on the subject matter of the dispute to be arbitrated generally has been denied." 7 J. Moore, *Federal Practice* ¶ 81.05[7], at 81–82 (2d ed. 1979). An excellent analysis is contained in

*Mississippi Power Co. v. Peabody Coal Co.,* 69 F.R.D. 558 (S.D. Miss. 1976).

Exceptions to the general rule have developed where peculiar factual necessities dictate that discovery should be allowed. For example in *Ferro Union Corp. v. SS Ionic Coast,* 43 F.R.D. 11 (S.D. Tex. 1967), a charter party agreement provided for arbitration in New York. The foreign flag vessel, crew and cargo were in Texas. The ship with its crew of Greek seamen was about to depart. Arbitration had not been demanded. The court allowed immediate discovery, considering the matter to be an exceptional circumstance, allowing the gathering of facts which might otherwise be forever lost. *See also Penn Tanker Co. v. C.H.Z. Rolimpex, Warszawa,* 199 F. Supp. 716, 718 (S.D.N.Y. 1961); and *Commercial Solvents Corp. v. Louisiana Liquid Fertilizer Co.,* 20 F.R.D. 359 (S.D.N.Y. 1957).

No such exceptional circumstances are present here so we need not and do not delineate the parameters which justify prearbitration discovery proceedings. We simply hold that there was no necessity demonstrated in these cases.

We reverse.

UTTER, C.J., ROSELLINI, STAFFORD, WRIGHT, DOLLIVER, HICKS, and WILLIAMS, JJ., and HAMILTON, J. Pro Tem., concur.

## APPENDIX

The Commercial–Balfour contract includes the following language:

11. ARBITRATION: Any controversy arising under or in connection with the contract shall be submitted to arbitration in Dallas, Texas in accordance with the rules of the American Arbitration Association; judgment on any award may be entered in any court having jurisdiction; the parties hereto submit to the jurisdiction of the Federal and State courts in Dallas, Texas and notice of process in connection with arbitral or judicial proceedings may be served upon the parties by registered or certified mail with the same effect as if personally served.

The Balfour–Couer d'Alenes contract includes the following language:

26. Recourse: In the event of any controversy between the parties to this agreement or claim arising under or in connection with this agreement or any breach thereof, seller shall have the option to seek recourse from the Superior Court of the State of California in and for the City and County of San Francisco or, in accordance with the Rules of the American Arbitration Association, arbitration of such claim, dispute or breach before the Association in San Francisco, California; in the event of arbitration, judgment upon the arbitration award may be entered in the Superior Court of the State of California in and for the City and County of San Francisco.

Reconsideration denied May 20, 1980.