[No. 37774-4-I.    Division One.    July 21, 1997.]

EXPERT DRYWALL, INC., *Appellant*, v. ELLIS-DON
CONSTRUCTION, INC., *Respondent*.

*Daniel C. Jacobson, J. Patrick Brown*, and *Chism, Jacobson & Johnson, P.L.L.C.*; and *Michael T. Schein*, for appellant.

*Terry R. Marston II, Eric A. Zukoski*, and *Marston & Heffernan*; and *Christopher L. Hirst* and *Montgomery, Purdue, Blankinship & Austin*, for respondent.

Cox, J. — Expert Drywall, Inc., seeks review of the trial court's order confirming an arbitrator's award in its favor against Ellis-Don Construction, Inc. Expert claims that the trial court erred by failing to vacate the award and remand to the arbitrator for consideration of attorney fees. Alternatively, Expert claims the trial court should have modified the award to include attorney fees. Because Expert was not entitled to an award of attorney fees under RCW 60.28.030, we affirm.

Ellis-Don was the general contractor for the construction of Plateau Middle School in Issaquah School District No. 411. Expert was the drywall subcontractor for that project. Expert began its work in early 1994. During the drywall work, the parties got into disputes over scheduling, resulting delays, and other interference with Expert's ability to perform efficiently under the subcontract. Expert and Ellis-Don agreed to submit their disputes to arbitration. The District was not a party to that arbitration.

The arbitrator conducted an arbitration hearing be-

tween the two parties over the course of six days during early April 1995. One day before the end of the hearing, Expert filed a claim against the retainage held by the District. In early May, the arbitrator advised both parties that he intended to rule substantially in favor of Expert on the claim. Each party then submitted requests for reconsideration. Expert included a request for fees under RCW 60.28.030, the labor and materials lien foreclosure statute. In anticipation of the arbitrator's issuance of his final award, Ellis-Don sent Expert checks totaling the amount of the anticipated award. On June 29, 1995, the arbitrator issued his final award. The arbitrator also determined that there was no contractual, equitable, or statutory basis for an attorney fee award.

On May 5, 1995, before the arbitrator issued his award, Expert commenced this action against Ellis-Don and the District to foreclose a lien against the retainage held by the District. The claim to funds was the same claim that Expert and Ellis-Don had submitted to the arbitrator. Expert sought damages in the amount of the arbitration award and a ruling that those damages constituted a lien against the retainage held by the District under the prime contract. Expert also sought attorney fees under RCW 60.28.030 and confirmation of the arbitration award. Expert asked the trial court to stay the litigation pending issuance of the arbitration award.

Ellis-Don moved for summary dismissal of the claim, and the trial court granted the motion because the parties had submitted all their disputes to the arbitrator. Ellis-Don subsequently filed a motion in the trial court to confirm the arbitration award. Expert moved for modification of the award to include attorney fees or, in the alternative, for vacation and remand for the arbitrator to award it attorney fees. The trial court confirmed the arbitration award without modification. Expert appeals.

### Statutory Attorney Fees

Expert argues that the trial court erred by failing to

modify or vacate the arbitrator's award because the arbitrator failed to determine whether Expert was entitled to attorney fees under RCW 60.28.030. We disagree.

Our review of an arbitrator's award "is limited to that of the court which confirmed, vacated, modified or corrected that award."[1] The trial court's review is confined to the question of whether any of the statutory grounds for vacation exists.[2]

RCW 7.04.160(4) provides that a trial court shall vacate an arbitration award if the arbitrator "exceeded [her] powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made." Either an erroneous rule of law or mistaken application thereof is a ground for vacation or modification under the statute.[3] But the appellant must demonstrate prejudice from the alleged misconduct to merit relief.[4] The party challenging the award has the burden to show that grounds for modification or vacation exist.[5] The basis for vacation must appear on the face of the award.[6] The arbitrator's reasons for the award are not part of the award itself, and we do not consider the evidence before the arbitrator.[7]

Here, the arbitrator issued an award in which he first disposed of the basic claims of the parties. In paragraph 11 of the award, he addressed the question of attorney fees as follows:

> I do not find any contractual or equitable authority with

---

[1] *Barnett v. Hicks*, 119 Wn.2d 151, 157, 829 P.2d 1087 (1992).

[2] *Groves v. Progressive Cas.*, 50 Wn. App. 133, 135, 747 P.2d 498 (1987), *review denied*, 110 Wn.2d 1016 (1988).

[3] *Boyd v. Davis*, 127 Wn.2d 256, 263, 897 P.2d 1239 (1995).

[4] RCW 7.04.160.

[5] *Groves*, 50 Wn. App. at 135.

[6] *Boyd*, 127 Wn.2d at 262-63.

[7] *Westmark Props., Inc. v. McGuire*, 53 Wn. App. 400, 402-03, 766 P.2d 1146 (1989).

regard to attorney's fees and costs. *I specifically find that I do not have authority to award attorney's fees and costs pursuant to RCW 60.28, et seq., as such authority lies solely with the Superior Court.*[8]

In Washington, attorney fees are recoverable only on the basis of contract, recognized ground in equity, or statute.[9] Expert's claim here is based solely on the last of these grounds. Thus, the question before this court is whether, on the face of the award, the arbitrator's resolution of the attorney fees issue met any of the statutory criteria for vacating or modifying the award.

The last sentence of paragraph 11 of the award indicates that the arbitrator denied Expert's fee request under RCW 60.28.030 because he believed the authority to make such an award lies solely with the superior court. We agree with the arbitrator's conclusion that he could not make an award of fees on the basis of what was before him. But we reach that result on different grounds than those the arbitrator stated.

Although the arbitrator expressed the belief that he could not award fees because only the superior court had that authority, we disagree with that reasoning. This state has a strong policy favoring the arbitration of disputes as a quick and inexpensive alternative to litigation.[10] We know of no authority that would preclude an arbitrator from awarding fees under this statute in the proper circumstances.

But the matters that Expert and Ellis-Don submitted to the arbitrator did not constitute a lien foreclosure under RCW 60.28.030. Thus, there was no basis under this statute to give rise to a fee award.

On a public works project, the governmental owner of

---

[8](Emphasis added.)

[9]*City of Seattle v. McCready*, 131 Wn.2d 266, 273-74, 931 P.2d 156 (1997).

[10]*Pegasus Constr. Corp. v. Turner Constr. Co.*, 84 Wn. App. 744, 751, 929 P.2d 1200 (1997).

the project withholds five percent of every payment owed the general contractor.[11] The project owner holds the retained percentage or "retainage" in trust as security for payment of the general contractor's subcontractors and suppliers.[12] To obtain a judgment against the retainage, a subcontractor or supplier must first serve a timely notice of claim on the project owner to obtain a lien against the retainage.[13] The subcontractor must then commence an action to foreclose the lien within four months of the date it filed the notice of claim.[14] RCW 60.28.030 provides, in part, that "[i]n any action brought *to enforce the lien*, the claimant, if he prevails, is entitled to recover, in addition to all other costs, attorney fees in such sum as the court finds reasonable."[15]

■■ The arbitrator did not have before him a proceeding to "enforce [a] lien" as required by RCW 60.28.030. First, the face of the award shows that the arbitration was based on an alleged contract. It was not a foreclosure proceeding against the statutory retainage held by the District. Moreover, Expert did not commence this lien foreclosure action until after the arbitration hearing was over and the parties had received preliminary word from the arbitrator of his intended disposition. Second, as Ellis-Don argues in its brief and Expert conceded at oral argument, the District was not a party to the arbitration. The District never agreed to arbitrate any of Expert's claims.[16] Thus, the retainage that it held was not the subject of the arbitration.

RCW 60.28.030 clearly contemplates the limited partici-

---

[11]RCW 60.28.010(1).

[12]RCW 60.28.010(1).

[13]RCW 60.28.011(2).

[14]RCW 60.28.030.

[15](Emphasis added.)

[16]See *Balfour, Guthrie & Co. v. Commercial Metals Co.*, 93 Wn.2d 199, 202, 607 P.2d 856 (1980) (stating that "arbitration stems from a contractual, consensual relationship").

pation of the holder of the retainage in a lien foreclosure proceeding. The statute states that "the public body shall not be required to make any detailed answer to any complaint or other pleading but need only certify to the court" various details of the public works project listed in the statute. But limited participation does not mean no participation. Because the District was not a party to the arbitration, there was no adjudication of the right to the retainage it held.

Because none of the conditions for foreclosing the lien existed in the arbitration proceeding, the arbitrator did not err by ruling that he could not award statutory attorney fees. Any error in his reasoning that only the trial court could make such an award is not a basis for reversal because Expert cannot demonstrate prejudice from the ultimate denial of fees.[17]

We also note that liens under RCW 60.28 secure payments owed by contractors to subcontractors. Ellis-Don paid the amount of the award. Therefore, Expert had no claim against the statutory retainage.[18]

For all of the above reasons, we hold that the trial court did not err by confirming the award.

Expert also asserts an unconstitutional deprivation of due process because there was no hearing on the merits of its attorney fee claim. Because Expert's claim did not implicate enforcement of a lien against the statutory retainage — a prerequisite for a fee award — we reject this argument.

The dissent would look beyond the face of the arbitration award to recharacterize the arbitration proceeding as an "action brought to enforce the lien" within the meaning of RCW 60.28.030. On the basis of this novel approach,

---

[17]See RCW 7.04.160.

[18]See Yates v. State Bd. for Community College Educ., 54 Wn. App. 170, 175-76, 773 P.2d 89 (1989) (affirming trial court's dismissal of claim for statutory attorney fees in dispute over underpayment of wages because negotiation outside context of Yates' action settled dispute without judicial findings that were the statutory basis for fees).

the dissent would award fees to Expert as the prevailing party in the arbitration. Alternatively, the dissent would reinstate the lien foreclosure action that the trial court dismissed. The sole purpose for reinstatement would be to award Expert its attorney fees. In either event, the dissent would award Expert fees on appeal.

The face of the arbitration award plainly characterizes the proceeding before the arbitrator as a contract action, not a lien foreclosure. Nothing on the face of the award shows that the arbitrator's characterization is incorrect. Thus, the dissent's suggestion that we recharacterize the proceeding as a lien foreclosure appears to be at odds with prevailing case law.[19]

Assuming for purposes of argument that it would be proper for this court to look beyond the face of the award and recharacterize the nature of the proceeding before the arbitrator as an "action brought to enforce a lien," the dissent's approach is unsound for at least three reasons.

██ Lien statutes are in derogation of the common law, and we must strictly construe them.[20] With this underlying principle in mind, we examine the dissent's approach.

First, Expert failed to file a notice of claim of lien *before* the arbitration proceeding. No lien could have arisen until such notice was filed.[21] The record clearly demonstrates, and counsel confirmed at oral argument, that filing of the notice of claim of lien was not accomplished until near the end of the arbitration. Moreover, no foreclosure under RCW 60.28.030 could have proceeded without that necessary first step.

---

[19]*See Boyd*, 127 Wn.2d 256.

[20]*Thompson v. Peninsula Sch. Dist. 401*, 77 Wn. App. 500, 505, 892 P.2d 760 (1995) (quoting *Airefco, Inc. v. Yelm Community Sch. No. 2*, 52 Wn. App. 230, 233, 758 P.2d 996, *review denied*, 111 Wn.2d 1029 (1988)).

[21]RCW 60.28.010(1) provides, in part: "Every person performing labor or furnishing supplies toward the completion of [public improvements or work] shall have a lien upon said moneys so reserved: *Provided, That such notice of the lien of such claimant shall be given* in the manner and within the time provided in RCW 39.08.030 as now existing and in accordance with any amendments that may hereafter be made thereto" (some emphasis added).

■ In *Shope Enters. v. Kent Sch. Dist.*,[22] our court stated squarely that the failure to file a notice of claim of lien against a governmental entity's retained percentage is fatal to commencing a lien foreclosure action. Because Expert failed here to file the notice of claim of lien *before* the arbitration, that proceeding cannot properly be re-characterized as an "action brought to enforce the lien."

The second problem with the dissent's approach is that the District, the holder of the retainage against which Expert untimely filed a notice of claim of lien, was not a party to the arbitration. We acknowledge that the District could not be made a party to the arbitration involuntarily. But that is not the point.

By statute, the District is a necessary party to the lien foreclosure.[23] The dissent cites no authority, and we could find none, that permits a lien foreclosure against the re-tainage to proceed without the District.

The third problem with the dissent's approach is that the arbitrator did not have jurisdiction of the retainage against which Expert failed to timely file a claim of lien. The dissent fails to explain how the arbitrator could conduct an action to enforce a lien against the retainage without jurisdiction over it.

The dissent observes that Expert requested fees under the lien statute in its prehearing memorandum to the arbitrator. But that request did nothing to cure any of these three problems. In short, the arbitrator's character-ization of the proceeding before him as a contract action was correctly reflected on the face of the award. Nothing Expert did in that arbitration changed the proceeding to a foreclosure.

The alternative the dissent proposes is to reinstate the foreclosure action that Expert filed after the arbitration

---

[22]41 Wn. App. 128, 131, 702 P.2d 499 (1985).

[23]RCW 60.28.030. *See Galvanizer's Co. v. State Highway Comm'n*, 8 Wn. App. 804, 807-08, 509 P.2d 73 (1973) ("A lien foreclosure action is absolutely void absent service of process upon a necessary party. . . .").

proceeding. The trial court dismissed the action. The sole purpose for reinstating the action would be to award Expert attorney fees under the lien foreclosure statute. This approach is as unsound as the other approach the dissent proposes.

The practical effect of this proposal would be to permit an award of fees to Expert for work it did substantially in the arbitration proceeding before it commenced a valid lien foreclosure proceeding. That cannot be a correct result. The lien foreclosure statutes permit the award of fees for *enforcing a lien*. Because there was no lien to enforce during the arbitration, Expert cannot recover fees under this statute. Moreover, because Ellis-Don paid Expert the full amount of the obligation established by the arbitrator before any substantial work in the lien foreclosure proceeding could have been done, there is simply no basis to award fees.

Because we believe that neither of the two alternatives the dissent proposes is sound, we also reject the proposal that Expert should be entitled to attorney fees on appeal.

Finally, the dissent speculates that the effect of our holding will be to discourage subcontractors from agreeing to arbitrate their contract disputes. We disagree.

We are unaware of any prohibition against subcontractors negotiating for the inclusion in their construction contracts of an attorney fee provision applicable to arbitrations or other proceedings to adjudicate claims. Had Expert done so here, it is unlikely this matter would now be before us.

Our holding should not adversely impact the use of arbitration proceedings. We adhere to the view that under the proper circumstances, which are not before us in this case, a party may successfully utilize arbitration to resolve lien claims against statutory retainage.[24]

---

[24]*See* WASHINGTON STATE BAR ASSOCIATION, ALTERNATIVE DISPUTE RESOLUTION DESKBOOK: ARBITRATION AND MEDIATION IN WASHINGTON § 3.3(3), at 11-12 (2d ed. 1995).

We affirm the trial court's confirmation of the arbitration award.

KENNEDY, A.C.J., concurs.

BECKER, J. (dissenting) — The majority concludes the subcontractor, Expert Drywall, lost its statutory right to attorney fees by engaging in arbitration. I respectfully dissent.

To summarize: Expert Drywall believed Ellis-Don paid less than agreed for Expert Drywall's work on the public project. The statute, designed to protect the rights of a subcontractor like Expert Drywall, gave Expert Drywall a lien against the statutory retainage. Expert Drywall perfected the lien as the statute requires, but also agreed beforehand to arbitrate its underlying dispute with Ellis-Don. Had there been no arbitration agreement, Expert Drywall's timely suit against the retainage could have proceeded in superior court. We must assume the court, like the arbitrator, would have found that Ellis-Don substantially shorted Expert Drywall. As a prevailing claimant, Expert Drywall would have been entitled to attorney fees. Expert Drywall's appeal asks us to explain why its voluntary agreement to arbitrate the dispute has now led to the opposite result.

The majority first explains that the arbitrator could not have awarded attorney fees since the public owner was not joined as a party to the arbitration.[25] This seems to me an unnecessary insistence on a formality. The public owner—here, the District—is merely a stakeholder with no interest in the dispute arising under the contract between Expert Drywall and Ellis-Don except to release funds from the retainage if Expert Drywall prevails on its claim and Ellis-Don does not pay it. A public owner, if a nonsignatory to the arbitration agreement, cannot be com-

---

[25]Majority at 890.

pelled to arbitrate.[26] With nothing to gain or lose in the proceeding, the public owner is unlikely to participate in the arbitration voluntarily. To require the presence of the owner as a precondition for an award of attorney fees under the statute makes it unlikely that arbitration can be used to resolve lien claims against statutory retainage.

In my view, since parties may submit "any controversy" to arbitration,[27] we should not foreclose the possibility that an arbitration can serve as the functional equivalent of an "action brought to enforce the lien."[28] An arbitrator should be authorized to make an award of attorney fees even in cases where the owner is not joined as a party. A judgment entered in the subcontractor's favor on such an arbitration award would not, of course, bind the public owner to release the retainage unless the public owner was a party to the arbitration. But in resolving the underlying dispute it would establish the subcontractor as the prevailing party and fix the amount of attorney fees owed, thus making it unnecessary for the superior court to re-adjudicate those issues in a companion superior court suit.

The majority also explains that Expert Drywall is not entitled to attorney fees because it did not file a notice of claim before the arbitration proceeding.[29] The majority assumes the lien did not exist until Expert Drywall filed its notice of claim,[30] but this issue has not been briefed. Arguably, the lien arose as soon as the work was done. If so, fees incurred during the arbitration were for the purpose of enforcing the lien even though the other steps necessary to perfect the lien came later.

Expert Drywall did request attorney fees pursuant to

---

[26]*See McClure v. Davis Wright Tremaine*, 77 Wn. App. 312, 315 n.1, 890 P.2d 466 (1995).

[27]RCW 7.04.010.

[28]RCW 60.28.030.

[29]Majority at 893.

[30]Majority at 894.

RCW 60.28 in its prehearing memorandum to the arbitrator. Ellis-Don has not argued this was insufficient notice of the claim for attorney fees, or that the lack of a formal notice prejudiced Ellis-Don's defense. Institution of both arbitration and litigation is the procedure recommended by the State Bar Association's Deskbook for aggrieved parties who find themselves in "this seemingly contradictory morass of procedural requirements."[31] I see no reason why Expert Drywall should necessarily be held to have waived a right to attorney fees, otherwise available, merely because the arbitration preceded the litigation.

The trial court dismissed Expert Drywall's lien foreclosure action on summary judgment on the basis that "all disputes between the parties were submitted to the arbitrator for resolution."[32] If, as the majority holds, Expert Drywall did *not* submit to the arbitrator its claim against the retainage, the trial court's basis for dismissing Expert Drywall's lien foreclosure action was obviously incorrect. The majority explains the dismissal was nonetheless proper because "Ellis-Don paid the amount of the award. Therefore, Expert had no claim against the statutory retainage."[33] But Expert Drywall's entitlement to attorney fees should not depend on the speed with which Ellis-Don paid the claim after it was adjudicated. To secure an award of attorney fees under the statute, it is not necessary that the claim actually be satisfied out of the retainage; it is only necessary that the claimant prevail against the contractor. Also, because Ellis-Don's haste in paying the anticipated arbitration award appears to have been prompted by the pending lien foreclosure suit, it is not unreasonable to view fees incurred in bringing that suit as an expense of enforcing the lien.

The majority finally explains that subcontractors can protect themselves by negotiating around the procedural

---

[31]WASHINGTON STATE BAR ASSOCIATION, ALTERNATE DISPUTE RESOLUTION DESKBOOK: ARBITRATION AND MEDIATION IN WASHINGTON, § 3.3(3), at 3-9 (2d ed. 1995).

[32]Order of Sept. 21, 1995.

[33]Majority at 891.

difficulties.[34] As a practical matter this is probably the best explanation. In hindsight, Expert Drywall should have refused to arbitrate unless Ellis-Don agreed in advance to an attorney fee provision equivalent to what the statute provides. But this answer is not entirely satisfactory either. The right to attorney fees is provided by statute; it should not be subject to negotiation. The "contradictory morass of procedural requirements" became in this case a trap for the unwary.

At a minimum, I would reverse the dismissal of the lien foreclosure action and remand for Expert Drywall to have its day in court. I would also authorize the trial court to award fees on appeal to the extent Expert Drywall ultimately is able to establish that it incurred attorney fees in its efforts to enforce the lien.

Review denied at 134 Wn.2d 1011 (1988).