IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| In the Matter of the Marriage of | No. 86382-7-I |
|---|---|
| JOHN TORSTEN LOOP, | |
| Appellant, | DIVISION ONE |
| and | UNPUBLISHED OPINION |
| LISA MICHELLE LOOP, | |
| Respondent. | |

HAZELRIGG, A.C.J. — John "Jack" Loop challenges the trial court's entry of a restraining order pursuant to an arbitration decision issued in his dissolution matter. However, he fails to demonstrate that the arbitrator lacked the authority to propose an order prohibiting him from contacting his child, A.L. Accordingly, we affirm the trial court's entry of the restraining order.

## FACTS

Jack and Lisa Loop[1] were married on August 13, 2005. They have one child, A.L., who is currently 17 years old. The parties separated on December 7, 2020, when Jack was arrested for a domestic violence incident against Lisa.[2] Jack filed for separation on January 11, 2021. An agreed temporary family law order was issued on February 22, designating Lisa as the primary residential parent. On

---

[1] Because the parties share the same last name, we refer to them by their first names. No disrespect is intended.

[2] Jack was later convicted of assault in the fourth degree in connection with this incident after entry of a guilty plea.

June 1, the trial court entered a temporary parenting plan, providing that "the "father's contact with the child shall be limited to a therapeutic setting based on the lack of emotional ties between the daughter and her father at this time." In spite of this order, the court later noted that Jack "engaged in a relentless campaign of surveillance and unwanted contact" with A.L. Some examples of Jack's behavior included surreptitiously recording a therapy session, repeatedly contacting A.L.'s tennis coach to be admitted to her practice, creating a fake Instagram[3] account to follow A.L., and adding pointed songs to her playlist with titles such as "Parental Alienation" and "Mom Lied About Everything."

A new temporary parenting plan was entered on August 12, which stated,

Father agrees that until the 12/13/21 review hearing, there shall be no contact with [A.L.] unless she initiates such contact. *This agreement includes not initiating contact with [A.L.] via email, text message, or sending notes through third parties or placing songs on [A.L.]'s playlists.*

*The father shall not intentionally show up at places he knows [A.L.] will be nor shall he watch her from afar.*

The amended temporary parenting plan entered in December 2021 similarly prohibited Jack from contact with A.L. unless she initiated it.[4]

On April 15, 2022, the trial court entered a second amended temporary parenting plan reestablishing contact between Jack and A.L. in phases, as recommended by parenting evaluator Dr. Lynn Tuttle. In phase 1, Jack was permitted to have one three-hour therapeutic supervised visit per week, but was not otherwise permitted to communicate with A.L. unless she initiated the contact.

---

[3] An Internet based social media platform.
[4] The review hearing was not conducted until April 2022.

In the supervised visit on May 8, Jack read a letter of apology to A.L., which A.L. felt was insincere. A.L. became upset and left the visit. Dr. Mollie Hughes, the visit supervisor, described Jack as making irrational assertions "possibly as a way to completely disregard [A.L.'s] feelings and thoughts as her own." Hughes immediately resigned as visit supervisor as a result.

Shortly after this failed visit, Jack had a book and game that he had ordered online delivered to A.L., despite the parenting plan prohibiting him from doing so. In October of that same year, Jack had a package containing naloxone delivered to A.L.'s home.[5] A.L. was truly upset by these deliveries and considered them to be "disturbing invasions of her privacy."

On January 12, 2023, Jack and his counsel signed a stipulation for arbitration agreeing "to submit all disputes, claims or controversies to neutral, binding arbitration at JAMS[6]." Lisa and her counsel signed the stipulation on February 8. Jack subsequently tried to back out of the stipulation, which compelled Lisa to file a motion to enforce the arbitration agreement. The court granted Lisa's motion and the parties proceeded to arbitration before Helen Halpert, a retired judge.

Arbitration was held on April 25 and 26 and from May 1 to 5. Jack and Lisa both testified at the arbitration, as did Dr. Tracee Parker and Dr. Jean Mercer. The arbitrator also accepted declarations in lieu of testimony from 12 additional witnesses. Following closing arguments on May 12 but before the arbitrator had

---

[5] Naloxone is a drug that rapidly reverses an opioid overdose. *Save Lives*, UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, https://dea.gov/onepill/save-lives.

[6] The organization JAMS offers mediation, arbitration, and dispute resolution services.

issued her decision, Jack posted photos on A.L.'s photo sharing application in violation of the temporary parenting plan. The arbitrator found it "particularly concerning that Jack made the decision to violate the various court orders that prohibit him from contacting [A.L.] by any means, while he was awaiting my decision on parenting issues. This demonstrates either complete lack of control or a concerning degree of hubris."

The arbitrator subsequently issued a 55-page narrative award, which was twice amended in response to motions for reconsideration from both parties. In connection with the award, the arbitrator also drafted a parenting plan, findings of fact and conclusions of law regarding domestic violence and parenting issues, and a restraining order. The parenting plan placed restrictions on Jack under RCW 26.09.191 due to his history of domestic violence and abusive use of conflict. As with the temporary parenting plans, the permanent parenting plan prohibited Jack from communicating with A.L. by any means unless A.L. initiated contact. In her findings of fact and conclusions of law, the arbitrator concluded that the testimony of multiple experts, Jack's past conduct, and his lack of insight into the harm he had caused to A.L.'s emotional and psychological well-being, all supported restricting Jack's residential time in this manner as necessary to protect A.L. The arbitrator also concluded that a restraining order was warranted to enforce these restrictions "[b]ecause the provisions in the parenting plan have been ineffective to curb Jack's behavior towards" A.L.

On February 23, 2024, the trial court confirmed the arbitration award in part and entered the final parenting plan, findings of fact and conclusions of law

regarding domestic violence and parenting issues, and restraining order, as drafted by the arbitrator with minor modifications.[7] Jack designated only the restraining order in his notice of appeal.[8]

ANALYSIS

I.    Standard of Review

Jack appeals the trial court's imposition of a restraining order that prohibits him from contacting A.L.  As a preliminary matter, Lisa asserts that we should not review Jack's claims of error because his appeal is likely to become moot by the date of this decision and Jack is similarly restricted by the terms of the parenting plan.  The restraining order does not expire until September 1, 2025, and as Jack correctly identifies, the restraining order carries criminal penalties for its violation, while the parenting plan does not.  Accordingly, this appeal is not moot and we review Jack's claims of error on their merits.

Courts in dissolution proceedings have broad statutory and equitable authority to impose and fashion restraining orders.  *Blackmon v. Blackmon*, 155 Wn. App. 715, 721-22, 230 P.3d 233 (2010) (explaining protection and restraining orders essentially types of injunctions and thus equitable in nature).  We review a trial court's decision to impose a restraining order for abuse of discretion.  *In re Marriage of Freeman*, 169 Wn.2d 664, 671, 239 P.3d 557 (2010).  "A trial court abuses its discretion if its decision

---

[7] The trial court struck the provision in the parenting plan requiring the parties to submit additional disputes to arbitration and added an order to surrender weapons to the restraining order, as the court believed both of these changes to be mandated by statute.  These modifications are not at issue in this appeal.

[8] The limitations on Jack's contact with A.L. that he challenges in his appeal of the restraining order are mirrored in the parenting plan.  However, because that order was not designated for review, we do not consider the propriety of the restrictions therein.

is manifestly unreasonable or based on untenable grounds." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 136 (1997).

The restraining order in this matter was entered by the trial court pursuant to the findings of fact and conclusions of law issued by an arbitrator. Judicial review of an arbitration award is exceedingly limited. *Davidson v. Hensen*, 135 Wn.2d 112, 119, 954 P.2d 1327 (1998). A court may disturb an award only on the narrow grounds listed in RCW 7.04A.230(1*). AURC III, LLC v. Point Ruston Phase II, LLC*, 3 Wn.3d 80, 86, 546 P.3d 385 (2024). Our review of an arbitrator's award is confined to a review of the decision by the court that confirmed, vacated, modified, or corrected that award. *Expert Drywall, Inc. v. Ellis-Don Constr., Inc.*, 86 Wn. App. 884, 888, 939 P.2d 1258 (1997).

II.     Authority of the Arbitrator

Jack asserts that the restraining order prohibiting him from contacting A.L. should be vacated because the arbitrator did not have the authority to propose such an order. An arbitrator exceeds their powers within the meaning of RCW 7.04A.230(1)(d) when the arbitration award exhibits a facial legal error. *Broom v. Morgan Stanley DW, Inc.*, 169 Wn.2d 231, 239-40, 236 P.3d 182 (2010). The facial legal error standard is a "very narrow ground for vacating an arbitral award" that furthers the "purposes of arbitration" while preventing "obvious legal error." *Id.* at 239. Furthermore, the facial legal error standard

> does not extend to a potential legal error that depends on the consideration of the specific evidence offered or to an indirect sufficiency of the evidence challenge. Courts are not permitted to conduct a trial de novo when reviewing the award, they "do not look to

the merits of the case, and they do not reexamine evidence." "The error should be recognizable from the language of the award."

*Salewski v. Pilchuck Veterinary Hosp., Inc.*, 189 Wn. App. 898, 904, 359 P.3d 884 (2015) (footnotes and internal quotation marks omitted) (first quoting *Broom*, 169 Wn.2d at 239; and then quoting *Cummings v. Budget Tank Removal & Envtl. Servs., LLC*, 163 Wn. App. 379, 389, 260 P.3d 220 (2011)).  Where the arbitration award sets forth the arbitrator's factual findings and conclusions of law, we consider any issues of law evident in those findings and conclusions as part of the "face of the award." *Cummings*, 163 Wn. App. at 389.

Jack first asserts that the arbitrator did not have the authority to propose a restraining order protecting his daughter for more than one year, as restraining orders protecting minors are limited to one year under RCW 7.105.315(2)(a).  While a protection order issued pursuant to RCW 7.105.315 that restrains a parent from contacting their child is restricted to "a fixed period not to exceed one year," *that* "*limitation is not applicable to orders for protection issued under chapter 26.09, 26.26A, or 26.26B RCW.*"  RCW 7.105.315(2)(a) (emphasis added).

The arbitrator indicated in her findings of fact and conclusions of law that a restraining order was warranted under RCW 26.09.050.[9]  Similarly, the restraining order signed by the court appears on the mandatory form used for protection orders entered pursuant to chapter 26.09 RCW.  Because the restraining order was plainly issued under chapter 26.09 RCW, the one-year limitation does not apply and the arbitrator had the authority to recommend a longer order.

---

[9] In an e-mail to the parties dated September 25, 2023, the arbitrator reiterated that she authorized the restraining order pursuant to RCW 26.09.300.

Jack further asserts that the arbitrator did not have the authority to impose a restraining order because the Uniform Family Law Arbitration Act (UFLAA), chapter 26.14 RCW, prohibits arbitrators from issuing protection orders. Jack cites no authority for this argument. Additionally, RCW 26.14.902 provides that the UFLAA applies to arbitration agreements signed on or after January 1, 2024, and only applies to earlier agreements if the parties expressly agree in writing. This matter was arbitrated pursuant to an agreement signed in 2023 and nothing in the record indicates that the parties ever agreed to have the UFLAA apply. Jack's argument that we should disregard the plain language of the statute for policy reasons is not well taken.

III.    Notice and Due Process

Jack next asserts that imposition of the restraining order violated his right to due process because he did not receive notice that a restraining order was a possibility. We disagree.

RCW 26.09.050 empowers the court in a family law action to "make provision for the issuance within this action of the restraint provisions of a domestic violence protection order or an antiharassment protection order." Furthermore, RCW 26.09.191(3) authorizes a court to restrict or eliminate a parent's contact with the child upon the finding of certain factors articulated by statute, including a long-term emotional impairment which interferes with the parent's performance of parenting functions, the absence or substantial impairment of emotional ties between parent and child, abusive use of conflict, or other factors adverse to the best interests of the child. *In re Marriage of Underwood*, 181 Wn. App. 608, 611, 326 P.3d 793 (2014).

- 8 -

Because both of these statutes grant broad discretion to the court to fashion an appropriate remedy, it is not necessary for a party in a dissolution to make a separate request for a restraining order.

Additionally, the procedural history of this case demonstrates that Jack had actual notice of the possibility of a restraining order. The stipulation for arbitration signed by Jack contained no restrictions on the arbitrator's authority and instead authorized the arbitrator to decide "all disputes, claims or controversies" at issue in the dissolution. Jack's contact with A.L. was initially restricted when the first temporary parenting plan was entered by the court on June 1, 2021. At least two additional temporary parenting plans were entered prior to arbitration, both of which contained significant restrictions on Jack's ability to contact A.L. Under these circumstances, Jack had sufficient notice that the arbitrator might exercise her discretion to propose a restraining order that implemented the restrictions ordered in the parenting plan.

Thus, Jack was both legally and factually on notice that the arbitrator might authorize a restraining order in conjunction with a parenting plan. To the extent Jack argues that he was not afforded an opportunity during the arbitration to contest the basis for the restraining order, this assertion is not reviewable because Jack did not provide a copy of any records from the arbitration proceedings. *See Story v. Shelter Bay Co.,* 52 Wn. App. 334, 345, 760 P.2d 368 (1988) (declining to review claim of error where appellant failed to provide adequate record).

IV.     Additional Challenges To Restraining Order

Jack asserts that the arbitrator disregarded the recommendations of the parenting evaluator in fashioning the parenting plan and recommending a

restraining order. We will not disturb a child custody disposition absent a showing of manifest abuse of discretion. *In re Custody of J.E.*, 189 Wn. App. 175, 182, 356 P.3d 233 (2015). We do not reassess credibility determinations or weigh conflicting evidence. *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). Both the narrative award and the findings of fact and conclusions of law quote directly from Tuttle's report, indicating that the arbitrator gave the parenting evaluator's recommendations due consideration. The weight the arbitrator ultimately gave to the proposals of the parenting evaluator are within the sole province of the arbitrator and we will not disturb those determinations.

Jack additionally claims that the imposition of a restraining order violates the constitutional guarantee of equal protection, his citizenship rights, and Washington's Parenting Act of 1987.[10] Because Jack did not develop any of these arguments in his brief, we decline to consider them. *See Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) (courts will not consider inadequately briefed arguments).

Jack also advocates for a number of policy changes, including prohibiting testimony by social workers and forbidding court commissioners from hearing protection order cases. These arguments should be directed to the legislature, not this court. *See McCaulley v. Dep't of Lab. & Indus.*, 5 Wn. App. 2d 304, 316, 424 P.3d 221 (2018).

Finally, Jack asserts multiple new arguments in his reply brief, including improper application of the rules of evidence, failure to appoint a guardian ad litem,

---

[10] LAWS OF 1987, ch. 460, § 57.

misconduct by the arbitrator, and a request for sanctions against Lisa's counsel. "An issue raised and argued for the first time in a reply brief is too late to warrant consideration." *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). We therefore decline to consider any of Jack's new arguments on reply.

V.      Attorney Fees on Appeal

Lisa requests an award of attorney fees on appeal pursuant to RAP 18.1(c), RCW 26.09.140, and RCW 7.04A.250(3). Under RCW 26.09.140, this court may, after considering the financial resources of the parties, "order a party to pay for the cost to the other party of maintaining the appeal." *See also In re Marriage of Kaufman*, 17 Wn. App. 2d 497, 521, 485 P.3d 991 (2021). However, because Lisa failed to comply with the procedural requirements set out in RAP 18.1(c) her request for fees is denied.

Affirmed.

WE CONCUR:

_____, ACJ

_____, C.J.          _____, J.