# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| RANDY LIBRI, individually,<br><br>　　　　　Respondent,<br><br>　　　　　v.<br><br>FIRST NATIONAL INSURANCE COMPANY OF AMERICA, a foreign insurer,<br><br>　　　　　Appellant. | No. 86449-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — In this action for underinsured motorist (UIM) insurance benefits, the insurer claims that the superior court should have imposed two reductions on an award to the insured made under Washington's mandatory arbitration procedures for civil actions, chapter 7.06 RCW, after the arbitrator declined to reach the issues. We conclude the insurer failed to adequately raise both reductions in the superior court. We exercise our discretion to impose a reduction based on the undisputed record, award Libri a portion of his attorney fees on appeal, and remand for revision of the judgment as a ministerial matter. We otherwise affirm.

I

Randy Libri filed this action in 2023 against First National Insurance Company of America (FNICA), claiming uninsured/underinsured motorist (UIM) benefits. Libri alleged and FNICA admitted that a third party caused a collision

with his vehicle, that the third party was at fault, and that Libri was not at fault. Libri alleged that he recovered the at-fault third party's insurance limits of $25,000.00, though FNICA pleaded insufficient information to admit or deny this. As an affirmative defense, FNICA pleaded, "Defendant may be entitled to an offset."

Libri waived any claim in excess of $100,000.00, the limit for claims subject to mandatory arbitration. See KING COUNTY LOCAL CIVIL ARBITRATION RULE 2.1(a). The court appointed an arbitrator, who entered the following award:

> The arbitration hearing having taken place on December 18, 2023, I make the following award:

| | | |
|---|---|---|
| Medical Special Damages: | $ | 51,075.55 |
| Mileage: | $ | 50.40 |
| General Damages: | $ | 42,000.00 |
| Total: | | $ 93,125.95 |
| Cost Bill: | | $ 1,396.92 |
| Total Award: | | $ 94,522.87 |

(Boldface omitted.) Neither party sought trial de novo under SCCAR 7.1. Libri filed a motion in superior court seeking entry of judgment on the total award amount.

In response to Libri's motion, FNICA asked the superior court to reduce the award when entering judgment based on Libri's earlier receipt of $25,000.00 from the at-fault tortfeasor and Libri's receipt of $10,000.00 in personal injury protection (PIP) benefits. Specifically, FNICA asked the court to change the award pursuant to CR 60, citing CR 60(a) permitting the correction of clerical errors, and CR 60(b)(1) and (b)(11) allowing relief from judgment on certain specified grounds.

In support of its contentions, FNICA filed a declaration by its counsel. FNICA's counsel testified that Libri's prehearing statement of proof at arbitration

2

listed the two claimed amounts. In that document, Libri had argued, "This is a UIM claim. Therefore, the arbitrator should consider the total value of the claim, minus the offsets that are available to the insurer." Libri stated, "In this case, the third party had minimum insurance, $25,000," and "[t]he Defendant also paid $10,000 in PIP benefits, but is required to pay [Hamm v. State Farm Mutual Automobile Insurance Co., 151 Wn.2d 303, 88 P.3d 395 (2004)] fees. The [Hamm] fees cannot be calculated until the recovery is known and costs awarded."

FNICA's counsel testified that, after the award, he exchanged e-mails with the arbitrator about the claimed reductions. He testified he attached true and correct copies of those e-mails. The attached documents showed that on January 5, 2024, FNICA's counsel e-mailed the arbitrator, copying Libri's counsel, stating that Libri had acknowledged the tortfeasor's $25,000.00 in insurance and FNICA's payment to the plaintiff of $10,000.00 in PIP benefits, the award made no mention of either, FNICA requested clarification, and, if the arbitrator intended for the reductions to be applied, FNICA requested an amended arbitration award. The arbitrator replied, copying Libri's counsel:

> Counsel, I was appointed as arbitrator in the UIM case and made my award based on the total value of the case w / o regard to any offsets. I will leave it [to] the parties to calculate the offsets given the full amount of the damages were considered by me and provided in the award.

FNICA argued that based on Libri's acknowledgement of the tortfeasor's insurance and the PIP coverage, the superior court should deduct those amounts in entering judgment. Libri replied that FNICA had never pleaded and proved an entitlement to either reduction, had not appealed the arbitration award, and could not rely on

3

the arbitrator's statements extrinsic to the award. Libri submitted FNICA's prehearing statement of proof from the arbitration, which made no reference to the claimed reductions.

The superior court entered judgment in the amount of $94,522.87, without applying either reduction. FNICA moved for reconsideration, now submitting the insurance policy governing Libri's UIM coverage. FNICA pointed to policy language stating, "Any payments under Underinsured Motorists Coverage under this policy shall be excess over any payment made under Personal Injury Protection Coverage provided by this policy."[1] FNICA discussed Mercier v. GEICO Indemnity Co., 139 Wn. App. 891, 165 P.3d 375 (2007), abrogated in part on other grounds by Little v. King, 147 Wn. App. 883, 889, 198 P.3d 525 (2008), examined below, but neglected to cite the case to the superior court. FNICA did not clearly present an argument other than the one it already had that the court should alter the award. It argued that a manifest injustice had occurred under CR 59. The superior court denied reconsideration.[2] FNICA appeals.

---

[1] FNICA provided no analysis of this language in the superior court, and makes no argument based on this language in this court. We do not assume this language, which appears to relate to priority, relates to reimbursement. FNICA omitted to mention the policy language on reimbursement, which required it to share in Libri's expenses. PIP reimbursement is discussed in "Part F — General Provisions," under "Our Right to Recover Payment," section E.

[2] FNICA assigns error both to the judgment and to the order denying reconsideration. We are able to resolve the issues without separately considering the motion for reconsideration.

4

II

For the first time on appeal, FNICA argues that with the arbitrator having not reached the claimed reductions, it fell to the superior court to do so. We first decide whether to entertain FNICA's new contention.

FNICA first failed to ask the arbitrator to reach all issues, and the arbitrator erred by failing to do so. FNICA and the arbitrator appear to have confused contractual, private arbitration with mandatory civil arbitration in Washington. Parties may agree by contract to submit disputes to arbitration. See e.g. Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010). Where there is a valid agreement to arbitrate, federal and Washington law govern the roles of the court and the arbitrator in the making, amendment, and enforcement of arbitration awards. See generally 9 U.S.C. §§ 9-12; RCW 7.04A.220-.260. Historically, UIM policies contained agreements to arbitrate the insured's legal entitlement to recover damages and their amount, an example of which was analyzed in Price v. Farmers Insurance Co. of Washington, 133 Wn.2d 490, 493, 946 P.2d 388 (1997). When the parties have contracted to submit disputes to arbitration, their agreement covers the scope of what is arbitrable. Granite Rock, 561 U.S. at 297; Price, 133 Wn.2d at 500. UIM arbitration clauses led to many decisions analyzing the scope of those agreements, including a consensus that coverage disputes were outside the scope of arbitration. Price, 133 Wn.2d at 498-99 (collecting cases).

This case does not involve a contractual agreement to arbitrate. In Washington, with certain exceptions, "All civil actions" in which the "sole relief

sought is a money judgment" within certain dollar limits "are subject to civil arbitration." RCW 7.06.020(1). In mandatory civil arbitration, the court retains the authority to decide certain pretrial motions and other issues. SCCAR 3.2(b)(1)-(2). But, while the case remains at all times under the jurisdiction of the court, SCCAR 1.3(a), the arbitrator has the authority, among other things, to "[d]etermine the facts, decide the law, and make an award." SCCAR 3.2(a)(7). In the award, the arbitrator "shall determine all issues raised by the pleadings." SCCAR 6.1. These provisions allow the arbitrator to resolve "the whole case." Mercier, 139 Wn. App. at 901. Here, arbitration was under RCW 7.06.020, not an agreement by the parties controlling the scope of arbitration. FNICA failed to ask the arbitrator to decide, and the arbitrator erred by not deciding, "the whole case."

Following arbitration under chapter 7.06 RCW, an aggrieved party may seek trial de novo in superior court. SCCAR 7.1. FNICA failed to exercise this option.

Last, when FNICA sought relief in the superior court after having failed twice to submit its claimed reductions for decision on the merits, it did not merely fail to call to the court's attention a proper basis for doing so, it proposed an action that would have been improper. FNICA asked the superior court to revisit the arbitration award under CR 60, or, in its motion for reconsideration, grant it a new hearing under CR 59. But this court has held, "A party to a mandatory arbitration who does not ask for a trial de novo thereby accepts the arbitrator's award 'and may not alter it by requesting action by the Superior Court which would amend that award.' " Mercier, 139 Wn. App. at 901 (quoting Trusley v. Statler, 69 Wn. App. 462, 465, 849 P.2d 1234 (1993)). If the superior court had done what FNICA asked

6

it do and amended the award under CR 60 or re-tried the merits under CR 59, it would have committed error. The superior court correctly declined to do so.

Although FNICA failed to alert the superior court to the fact, it had a remedy available to it that it briefs for the first time in this court. In Mercier, we went on to explain that, while the superior court cannot modify the decision of the arbitrator, it has the authority to complete the adjudication of issues undecided by the arbitrator. 139 Wn. App. at 902. We interpreted SCCAR 1.3[3] as obligating the court to "decide matters that the arbitrator had placed beyond the scope of arbitration." Id. at 903. In Mercier, also a UIM case, the arbitrator issued a letter ruling before arbitration indicating that he would not consider amounts the insured had received from other sources, but would only determine the insured's damages. Id. at 896-97. After the arbitrator entered an award to that effect, with no party seeking trial de novo, the superior court in its judgment reduced the award by the tortfeasor's $25,000.00 insurance limit and the insurer's $10,000.00 in medical payments. Id. at 897-98. We approved the superior court's reaching the issues, treating the arbitrator's ruling as referring the issues to the court. Id. at 902. We contrasted Trusley. Id. at 901-02. In Trusley, the arbitrator denied a party's request for attorney fees, 69 Wn. App.at 463, and in court the party obtained fees on a different basis when seeking judgment on the award, id. at 464-65. We reversed, holding a party who has not asked for a trial de novo may not seek relief from the superior court amending the award. Id. at 465. FNICA argues that like the arbitrator's ruling

---

[3] In 2019, among other changes, the name of the former MAR was changed to SCCAR. See Malvern v. Miller, 24 Wn. App. 2d 173, 176 n.1, 520 P.3d 1045 (2022).

in Mercier, the arbitrator's postaward e-mail here indicated the arbitrator never reached the issue of FNICA's claimed reductions, leaving those issues to be decided by the court.

FNICA never argued to the superior court that SCCAR 1.3 and Mercier called upon the court to reach issues in the first instance that the arbitrator had not. FNICA argued the exact opposite, that the superior court should rely on CR 60 to alter the award, precisely what Mercier and Trusley explain the court could not do. As FNICA framed the relief it sought, the superior court was correct that the relief was unavailable. We generally do not consider arguments that a party did not make in the superior court. Cave Props. v. City of Bainbridge Island, 199 Wn. App. 651, 662, 401 P.3d 327 (2017). However, when an argument is related to the issues addressed in the superior court, we may exercise discretion to consider newly-articulated theories for the first time on appeal. Id. We exercise our discretion to reach the issues to the extent of applying the law to the undisputed record. But we decline to require the superior court to reopen its proceedings for further adjudication.

III

Libri offers several other arguments against reaching the reductions. Libri first asserts that FNICA did not adequately plead the claimed deductions. A party must generally plead affirmative defenses, or otherwise validly assert them to avoid waiver. Henderson v. Tyrrell, 80 Wn. App. 592, 624, 910 P.2d 522 (1996). For purposes of notice pleading, FNICA's assertion that it may be entitled to an offset is sufficient to state an affirmative defense of payment, whether referring

strictly to a setoff or an offset. See Winters v. State Farm Mut. Auto. Ins. Co., 144 Wn.2d 869, 876, 31 P.3d 1164 (2001) (defining " 'setoff' " and " 'offset' " as used in opinion).

For the first time in this court, Libri challenges the arbitrator's e-mail as unauthenticated hearsay. FNICA's attorney could not authenticate documents about whose authenticity he lacked personal knowledge, Burmeister v. State Farm Insurance Co., 92 Wn. App. 359, 366, 966 P.2d 921 (1998), but he could testify that the e-mail between himself, Libri's counsel, and the arbitrator was what it purported to be, State v. Young, 192 Wn. App. 850, 855-56, 369 P.3d 205 (2016) (citing ER 901(b)(10)). And documents with independent legal effect, here FNICA's request to the arbitrator for relief and the arbitrator's response, are not subject to the prohibition on hearsay.[4] ROBERT H. ARONSON & MAUREEN A. HOWARD, THE LAW OF EVIDENCE IN WASHINGTON § 10.05[2][f] (5th ed. 2016).

Libri next argues that the arbitrator had no authority to redetermine the merits of a claim already decided, leaving the court only the four corners of the arbitration award. But Libri bases this argument on decisions enforcing contractual arbitration awards, and in one case, a rule of the Commercial Arbitration Rules of the American Arbitration Association. See Bosack v. Soward, 586 F.3d 1096, 1102 (9th Cir. 2009); Expert Drywall, Inc. v. Ellis-Don Constr., Inc., 86 Wn. App. 884, 888, 939 P.2d 1258 (1997). The authority Libri cites acknowledges that an arbitrator may in some cases clarify or complete the award. Int'l Bhd. of

---

[4] Libri's motion to strike is denied.

Teamsters, Loc. 631 v. Silver State Disposal Serv., Inc., 109 F.3d 1409, 1411 (9th Cir. 1997).

Under SCCAR 6.2, an arbitrator may file and serve "an amended award to correct an obvious error made in stating the award if done within the time for filing an award or upon application to the superior court." The arbitrator never followed SCCAR 6.2, but FNICA asked the arbitrator to do so to clarify that the arbitrator had not reached the claimed reductions. Given the arbitrator's authority to amend an award, and FNICA's invocation of the procedure, we decline to give less effect to the arbitrator's postaward ruling here than we gave to the arbitrator's preaward ruling in Mercier. The arbitrator's ruling reserved to the court the issues of the reductions claimed by FNICA.

IV

We therefore turn to the merits of the claimed reductions insofar as the existing record permits. Where there are no relevant facts in dispute, decisions regarding insurance coverage are reviewed de novo. Hillhaven Props. Ltd. v. Sellen Constr. Co., 133 Wn.2d 751, 757, 948 P.2d 796 (1997).

FNICA sought to reduce the award by $25,000.00 because that was the amount of insurance the tortfeasor carried. UIM carriers are entitled to setoff the amount of any tortfeasor recovery from the amounts owed to an insured under a UIM policy. Hamm, 151 Wn.2d at 308; Allstate Ins. Co. v. Batacan, 139 Wn.2d 443, 451, 986 P.2d 823 (1999); Hamilton v. Farmers Ins. Co. of Wash., 107 Wn.2d 721, 728, 733 P.2d 213 (1987); Allstate Ins. Co. v. Dejbod, 63 Wn. App. 278, 285, 818 P.2d 608 (1991). In addition to pleading that he had recovered that amount

from the tortfeasor, Libri admitted in his prehearing statement of proof that the tortfeasor had this amount of insurance. Libri's admission is sufficient to allow the determination that FNICA was entitled to have the third-party insurance limits subtracted from the award.[5]

FNICA also sought to reduce the award by $10,000.00 based on its assertion it had paid that amount in PIP benefits. As to this amount, Libri made only a qualified admission. Although Libri admitted FNICA had paid the amount, Libri maintained that FNICA's rights concerning this amount are qualified by Hamm.[6] As that decision explained, in contrast to a UIM carrier standing in the shoes of the tortfeasor, "PIP carriers generally contract for a right to receive reimbursement of PIP benefits if an insured recovers from the tortfeasor, a UIM carrier, or both." Hamm, 151 Wn.2d at 308-09. But "if the PIP carrier seeks

---

[5] At oral argument, Libri suggested that FNICA's right to a credit for the tortfeasor's liability limits might be limited in case Libri was not made whole. Wash. Ct. of Appeals oral arg., Libri v. First Nat'l Ins. Co. of Am., No. 86449-1-I (Jan. 17, 2025), at 15 min., 23 sec. to 15 min., 38 sec., https://tvw.org/video/division-1-court-of-appeals-2025011447/?eventID=2025011447. This is true when a UIM insurer seeks to offset PIP benefits. Sherry v. Fin. Indem. Co., 160 Wn.2d 611, 625, 160 P.3d 31 (2007). Under the "made whole" rule, the insured is entitled to be compensated for "any losses" before an insurer "may recover its payments." Grp. Health Coop. v. Coon, 193 Wn.2d 841, 850, 447 P.3d 139 (2019). But the UIM carrier's credit for the third party limits goes to the coverage the carrier must provide in the first instance because "the sum of the limits of liability" under all applicable polices was "less than the applicable damages which the covered person is legally entitled to recover." RCW 48.22.030(1). It does not address the allocation of a recovery from a third party as between the insured's losses and an insurer that has covered some of those losses. In this case, because the arbitrator's award determined Libri's damages and there is sufficient third party and UIM coverage to cover them, there is no issue of full compensation.

[6] This acknowledgment by Libri—that FNICA was entitled to consideration only of its PIP payments consistent with Hamm—is consistent with Libri's current position that there is no appropriate determinable reduction. Thus, FNICA's argument that Libri should be "estopped" is unavailing.

reimbursement from the funds obtained through the insured's efforts, the PIP carrier must pay a pro rata share of the insured's legal expenses." Id. at 309. Although Libri referenced Hamm at arbitration, which concerned an uninsured tortfeasor, id., Libri's case is controlled by Winters. In Winters, insureds were injured by tortfeasors carrying $25,000.00 in limits, received PIP benefits, settled with the tortfeasors for their limits, and obtained determinations of their damages in pursuing UIM benefits. 144 Wn.2d at 873, 874-75. The Supreme Court held that when seeking to recover PIP payments from the UIM recovery, the insurer is required to pay its share of the costs associated with the recovery. Id. at 883.

By reserving rights under Hamm, Libri never made an unqualified admission permitting a determination that FNICA was entitled to reduction in any specific amount. FNICA failed to present the arbitrator, the superior court, or this court with a record that would permit this determination. Where FNICA failed to submit its issues for decision at arbitration, failed to seek trial de novo, and failed to inform the superior court of any proper basis for reaching them, we will not require reopening the proceedings to entertain FNICA's new arguments.

V

Libri seeks attorney fees on appeal. Libri does not prevail on the issue of reduction for the tortfeasor's liability limits and is not entitled to fees on that issue. However, a dispute about whether an insurer is required to pay a pro rata share of attorney fees under Winters is a coverage dispute on which a prevailing insured is entitled to attorney fees. Matsyuk v. State Farm Fire & Cas. Co., 173 Wn.2d 643, 658-59, 661-62, 272 P.3d 802 (2012); Olympic S.S. Co. v. Centennial Ins. Co.,

12

117 Wn.2d 37, 52-53, 811 P.2d 673 (1991).  We award Libri attorney fees on appeal incurred solely regarding the claimed reduction for PIP payments.  A commissioner of this court shall determine the fee award, and an express condition of Libri's receiving a fee award is that Libri strictly segregate attorney fees between the reduction for the tortfeasor's liability limits, on which he does not prevail, and the reduction for the PIP payments, on which he does.

VI

We remand with directions to reduce the judgment as a ministerial matter by $25,000.00 based on the amount of the tortfeasor's insurance.  We award Libri the stated attorney fees on appeal, subject to his further compliance with this opinion and with RAP 18.1(d).  We otherwise affirm.

_Birk, J._

WE CONCUR:

_Chung, J._          _Mann, J._